**Ex parte SMITH.**

No. 199.

District Court, M. D. Pennsylvania.

Aug. 7, 1947

936

Daniel F. Mathews, of Syracuse, N. Y., and Frank J. McDonnell, of Scranton, Pa., for petitioner.

Arthur A. Maguire, U. S. Atty., of Scranton, Pa., and Major Thayer Chapman, U. S. Army, Judge Advocate General's Office, of Washington, D. C., for respondent

FOLLMER, District Judge

This habeas corpus proceeding is instituted by Bernard W. Smith, a military prisoner at the United States Penitentiary, Lewisburg, Pennsylvania, who was convicted by a General Court-Martial on two charges involving violations of the 92nd and 93rd Articles of War, 10 U.S.C.A. §§

1564, 1565.[1] The first charge involved the carnal knowledge of one Sheila Winifred Dale, a British girl, 20 years of age, on July 11, 1944; the second charge involved an assault with intent to commit rape upon one Miriam Florence Cullum, a British girl, 19 years of age, on the same date and within a period of less than one-half hour prior to the offense set forth in the first charge, both violations occurring in the same general vicinity on what is known as Ipswich-Manning Tree Road, Lawford, Essex, England.

Petitioner has alleged numerous errors which he seeks to set up as denials of due process. All the matters raised by him may be summarized in four basic contentions as follows:

1. That the trial court under the evidence should have found him "not guilty".

2. Incompetency of Counsel.

3. That the pre-trial investigation under Article of War 70, 10 U.S.C.A. § 1542, was conducted in such a manner as to deprive the General Court-Martial of jurisdiction of the petitioner.

4. That matters occurring in the course of the trial including the improper admission of evidence and the unexplained absence of a witness deprived the Court of jurisdiction and rendered his conviction void.

Counsel for the petitioner sought in this proceeding to review the entire testimony had before the trial court, to point out discrepancies between the testimony of witnesses for the prosecution and the defense and (on the basis of his contention that the trial court should have believed all of the witnesses for the defense and not the witnesses for the prosecution) now contends that the trial court erred in finding the petitioner Smith guilty. There was no proof of any deliberate deception or suppression of evidence by the prosecution. Smith's position here is that the prosecution witnesses should have been disbelieved, that his witnesses as to alibi should all have been believed and that on that basis he should have been acquitted and that this Court should now hold that the prosecution's witnesses were not telling the truth.

 Whether or not a witness in the trial of a case committed perjury is not in and of itself the basis for habeas corpus.[2] It was for the trial court to decide whether it would believe or disbelieve certain testimony and to determine what weight it would give to any portion of the evidence. It is not the function of this Court in a habeas corpus proceeding to re-evaluate the evidence from the cold record, without the benefit of seeing and hearing the witnesses, and to decide whether or not it would have disagreed with the findings of the trial court. The Supreme Court has always recognized that this is not a function of the Court in a habeas corpus proceeding and only recently in connection with a habeas corpus involving a military trial has reaffirmed this principle.[3]

---

[1] "Charge I: Violation of the 92nd Article of War.
"Specification: In that Private Bernard W. Smith, Headquarters Detachment 353rd Fighter Group did at Ipswich-Manning Tree Road, Lawford, Essex, England, on or about 11 July 1944 forcibly and feloniously, against her will, have carnal knowledge of Sheila Winifred Dale age 20, Victoria Cottages Station Road, Lawford, Essex.
"Charge II: Violation of the 93rd Article of War.
"Specification: In that Private Bernard W. Smith, Headquarters Detachment 353rd Fighter Group did, at Ipswich-Manning Tree Road, Lawford, Essex, England, on or about 11 July, 1944, with intent to commit a felony, viz., rape, commit an assault upon Miriam Florence Cullum, 57 Colchester Road, Lawford,

Essex, England, by willfully and feloniously dragging her from the highway into a field, hitting her with his fist on the head, taking hold of her throat with his hands and kicking her in the back with his foot."

[2] Hodge v. Huff, 78 U.S.App.D.C. 329, 140 F.2d 686, certiorari denied 322 U.S. 733, 64 S.Ct. 946, 88 L.Ed. 1567; Long v. Benson, 6 Cir., 140 F.2d 195.

[3] The Supreme Court in Re Yamashita, 327 U.S. 1, 8, 66 S.Ct. 340, 344, 90 L. Ed. 499, said "We also emphasized in Ex parte Quirin, (317 U.S. 1, 63 S.Ct. 2, 87 L.Ed. 3) as we do here, that on application for habeas corpus we are not concerned with the guilt or innocence of the petitioners. * * * The courts may inquire whether the detention complained of is within the authority of those detaining the petitioner. If the military

However, by reason of the other matters raised by petitioner, we have carefully reviewed the entire Court-Martial record. Miriam Cullum testified to facts which showed a rather brutal assault with the expressed intention of committing rape. Its culmination was only prevented by the timely arrival of one Carter, a British Corporal, and a civilian. They found her on the ground, crying, and in a shaken nervous condition. Her legs were bruised and her neck was bruised and swollen for several days. The time was fixed at approximately 11:00 o'clock p.m. Sheila Dale, the other victim, testified to being dragged and thrown to the ground and attacked. She arrived home in a hysterical condition. An American soldier who was visiting in a nearby house, was called and testified to her condition, that her blouse was open, and that there were dirt marks on her clothing. There was medical testimony that her right thigh, left arm and left knee were bruised. Each girl, independently, and without any information from the other, gave descriptions of their attacker, which tallied closely with Smith's appearance. At a line-up of 20 soldiers a week or so later each girl was separately taken from a room to walk past the line-up and without any assistance from the other, immediately and unhesitatingly pointed out Smith as the attacker. They again positively identified him at the trial. The last attack occurred about five miles from the Post. The time of the attack was necessarily an approximation and estimated as being around 11:30 to 11:45 o'clock p.m. The defense was an alibi that Smith had reached the Post at 11:30 o'clock p.m. But the testimony of his witnesses as to time also consisted of approximations which may be best exemplified by that of a soldier named Partyka who was joined by Smith on the way back to the Post. He had been at various "pubs", the last one being the "Bucks Horn", "loafing around and drinking"[4] and was "feeling high".[5] On direct examination he testified that he was there until 10:00 o'clock drinking beer with a few girls, then went on his cycle with one of the girls to the first bridge, and stayed about 15 to 20 minutes and then went home. Also as to the time of leaving he stated "It was a little after 10 because I took a little time finishing my beer." That he left this girl "about 25 after 10" and "Then I was on my way home and then met up with Smith" on his cycle about three quarters of a mile farther on. They stopped on the way and had a smoke "about five minutes" and reached the gate "near 11:30". He also stated that he met Smith "about 25 minutes after 10", then after being reminded of the three quarters of a mile traveled after leaving the girl he estimated the time at "about a quarter to 11." On cross-examination he estimated the time with the girl at "about 20 minutes" and that it could have been longer and finally, that it could have been close to midnight when he reached the Post. On examination by the Court he fixed the time of getting his last beer at 10:00 o'clock because the woman at the "Bucks Horn" called "Time." He admitted he did not look at a clock, and also that he did not know whether this particular "pub" closed at 10 or 10:30. Significant was his statement that Smith told him " * * * he had a girl that night", although Smith in his testimony said he had visited a number of "pubs", that he was drinking, but made no mention whatsoever of being with a girl.

Of Partyka's testimony Counsel for petitioner naively comments, "He met the petitioner on the way back to camp that night at 10:45; at that time he was bicycling up the hill; Partyka caught up with him and rode into camp with him. Other than a short stop for a smoke they continued to the camp without stopping and came in Gate 2 and reached that gate at 11:30"[6] and states further, "We find Smith's entrance

---

tribunals have lawful authority to hear, decide and condemn, their action is not subject to judicial review merely because they have made a wrong decision on disputed facts. Correction of their errors of decision is not for the courts but for the military authorities which are alone authorized to review their decisions. * * * *"

[4] Court-Martial Record page 187 (Trial Testimony page 124).

[5] Court-Martial Record page 189 (Trial Testimony page 126).

[6] Page 3 of Petitioner's Brief.

into camp, at about 11:30 corroborated by Partyka, * * *."

 Certainly, there are few records which when searched with a fine tooth comb will not yield some debatable rulings of law or admission of evidence and if this could be done in habeas corpus there would be no end to litigation and the time of the courts would be occupied in useless and futile speculation. The pronouncement of the Supreme Court in Glasgow v. Moyer, 225 U.S. 420, 429, 32 S.Ct. 753, 756, 56 L. Ed. 1147, that " * * * The principle of the cases is the simple one that if a court has jurisdiction of the case, the writ of habeas corpus cannot be employed to re-try the issues, whether of law, constitutional or other, or of fact", is still a salutary rule. Certainly here the eight members of the trial court with the benefit of observation of the witnesses were in a better position than this court to arrive at the correct result. Moreover, on the record before us, there would be no inclination to disagree with the verdict at which they arrived. The trial record shows a careful impartial trial, and the Board of Review made an exhaustive and careful study of both the law and the facts of the trial.

 We are next concerned with the usual allegation of competency of assigned counsel, the petitioner alleging that he did not have adequate representation. Military Law is due process of law to those in the military or naval service[7] and for proceedings before Courts-Martial a commissioned officer is competent counsel.[8]

The special orders dated August 9, 1944, designating the members of the court in petitioner's case also appointed for him a defense counsel and assistant defense counsel.[9]

 In addition thereto, the Record[10] shows that Smith was given an opportunity to introduce civil or military counsel of his own selection and accordingly did introduce as Associate Counsel one 2nd Lt. Harry Lieberman, although electing to also retain the services of the appointed Defense Counsel and Assistant Defense Counsel.[11] Lieberman, the selected counsel, was a law school graduate with 10 years experience in the practice of law.[12] The appointed Assistant Counsel was " * * * a graduate of Notre Dame Law School and admitted to practice in Washington."[13] Whether or not the other appointed Counsel was an attorney does not appear. Whether any of the specific guarantees of the 5th and 6th amendments relating to criminal prosecutions apply to petitioner in military trial[14] need not be decided here since the remaining questions may be fully disposed of, giving the petitioner the benefit of the principles as applied to criminal prosecution in the Civil Courts. That he had counsel of his own choosing might well dispose of this question, but the reflection cast upon counsel, including appointed counsel calls for consideration. The burden of proving such incompetency is upon petitioner.[15] He has introduced no evidence other than the trial record and his own lay conclusion. Even had the record shown carelessness of counsel or a failure of counsel to object to the introduction of evidence, or errors in their advice, it would not rise to that plane where it would constitute a ground for habeas corpus.[16] Nor does the Consti-

---

[7] Ex parte Benton, D.C.Cal., 1945, 63 F.Supp. 808.

[8] Altmayer v. Sanford, 5 Cir., 148 F.2d 161.

[9] Special Order No. 195, dated August 9, 1944, (Page 64 of the Court-Martial Record) appointed Captain William Kapelman as Defense Counsel and 1st Lt. Frederick M. Crollard, Jr., as Assistant Defense Counsel. This procedure was in accord with the requirements of Article of War 11, 10 U.S.C.A. § 1482.

[10] Page 66 of Court-Martial Record.

[11] Page 66 of Court-Martial Record. The Trial Court's preliminary inquiry complied with Article of War 17, 10 U. S.C.A. § 1488.

[12] Respondent's Exhibit No. 2.

[13] Transcript of Testimony page 42.

[14] See discussion Ex parte Benton, supra.

[15] Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830; Bostic v. Rives, 71 App.D.C. 2, 107 F.2d 649, certiorari denied 309 U.S. 664, 60 S.Ct. 593, 84 L.Ed. 1011; Boehman v. Green, 78 U.S.App.D.C. 83, 136 F.2d 804; Achtien v. Dowd, 7 Cir., 117 F.2d 989.

[16] Diggs v. Welsh, 80 U.S.App.D.C. 5, 148 F.2d 667; Dorsey v. Gill, 80 U.S.

tution guarantee the assistance of the most brilliant counsel.[17] To entitle petitioner to relief on this ground there must be such a neglect of duty " * * * as to make the trial itself 'offend those canons of decency' which constitute due process of law.",[18] or an extreme case which would make the proceedings "a farce and a mockery of justice."[19]

 Petitioner's counsel, with the benefit of having before him the typewritten copy of the entire testimony, and with an opportunity to carefully analyze the same, and with a knowledge of the very last witness's testimony, points out instances where he, had he been trying the case, would have put some additional questions to some of the witnesses, or objected to some of the testimony. Counsel in the actual trial of a case and with a background of information not appearing in the record, may well, in the exercise of good judgment, deem it wise to refrain from asking certain specific questions or refrain from objecting.[20] Moreover, an examination of the trial record convinces this Court that the petitioner was most ably, competently, and vigorously represented and defended.

Petitioner alleges that the investigation under Article of War 70, 10 U.S.C.A. § 1542, was conducted in such a manner as to deprive the General Court-Martial of jurisdiction. Petitioner's position is that the requirements of Article of War 70 are all jurisdictional and any deviation would per se render any subsequent proceedings void.

It has been aptly said that "It was no part of the purpose of the authors of Ar-

ticle of War 70 to prevent the trial, conviction and punishment of a guilty man.",[81] and Article of War 37, 10 U.S.C.A. § 1508,[22] as a guide for reviewing and confirming authorities provides as to Courts-Martial that errors complained of must have "injuriously affected the substantial rights of an accused."

Petitioner alleges that Lt. Todd was "the originator of the charges and the accuser in fact," and "ineligible to be the impartial investigator under the 70th Article of War."

 The formal charges were preferred by Captain MacGregor, the accused's immediate Commanding Officer.[23] The attacks had been reported to the British Police and they had conducted a preliminary investigation and interviewed witnesses with the assistance of several agents assigned by the Criminal Investigation Division, U. S. Army.[24] Lt. Todd as Provost Marshal of the Army Base or "Field", first knew about the matter between the 16th and 18th of July, when visited by two British Constables,[25] and made available to them the lists of names to locate soldiers who had been in that vicinity, including a "fellow by the name of Smith." He called in some suspects, including Smith, for interviews.[26] The British Constable examined Smith's hand for tooth marks.[27] Subsequently Lt. Todd participated in arranging a line-up of 14 soldiers to ascertain whether the girls identified any suspect, including Smith.[28] Whether Lt. Todd participated as Provost Marshal prior to or as investigator subsequent to his designation is immaterial. It was a proper part of an

App.D.C. 9, 148 F.2d 857, para. 49; Andrews v. Robertson, 5 Cir., 145 F.2d 101, certiorari denied 324 U.S. 874, 65 S.Ct. 1013, 89 L.Ed. 1427.

[17] United States Ex Rel Mitchell v. Thompson, D.C.N.Y., 56 F.Supp. 683.

[18] Strong v. Huff, 80 U.S.App.D.C. 89, 148 F.2d 692.

[19] Diggs v. Welsh, supra.

[20] Bostic v. Rives, supra.

[21] Court-Martial 299477, Floyd (1943) 17 Board of Review 153, 156.

[22] Article of War 37, 10 U.S.C.A. § 1508, provides: "The proceedings of a court-martial shall not be held invalid, nor the findings or sentence disapproved, in any case on the ground of improper

admission or rejection of evidence or for any error as to any matter of pleading or procedure unless in the opinion of the reviewing or confirming authority, after an examination of the entire proceedings, it shall appear that the error complained of has injuriously affected the substantial rights of an accused: * * *."

[23] Court-Martial Record pages 32 to 34.

[24] Report of C.I.D. in Court-Martial Record, pages 38 to 40.

[25] Transcript of Testimony, page 36.

[26] Transcript of Testimony, page 37.

[27] Transcript of Testimony, page 9A.

[28] Transcript of Testimony, page 37 and 38.

impartial investigation.[29] The Record shows that as Investigating Officer, Lt. Todd advised Smith of his rights, informed him of the statements of witnesses, called every witness Smith requested, permitted Smith to interrogate any witnesses he desired, and conducted a fair and impartial investigation under Article of War 70.[30] This was all that Smith had a right to ask. He was not deprived of any substantial right.[31] At the opening of the trial he was also given full opportunity to object to proceeding with the trial.[32]

Petitioner contends that the line-up at which he was identified was unfairly conducted,[33] and that the British Constable at his interview had no right to look at his hand for tooth marks, and that these matters constituted compulsory self-incrimination.[34]

Petitioner proceeds on the theory of an involuntary confession. The girls at the trial again positively identified him, and his hand was available for examination at the trial. Consequently, even though considered as an involuntary confession, it did not prevent such identification at the trial.[35] Nor is the question of the admission thereof at the trial a proper subject of habeas corpus.[36] Moreover, fundamental-

[29] It also appears that Smith consented to the line-up, Lt. Todd's Testimony, Transcript of Testimony, page 38 and 39; Smith's Testimony, Transcript of Testimony, page 32.

[30] Court-Martial Record pages 42 to 54.

While the Court-Martial Record cannot be collaterally attacked—Givens v. Zerbst, 255 U.S. 11, 41 S.Ct. 227, 65 L. Ed. 475; Riddle v. Dyche, 262 U.S. 333, 43 S.Ct. 555, 67 L.Ed. 1009; Hill v. United States ex rel. Wampler, 298 U.S. 460, 56 S.Ct. 760, 80 L.Ed. 1283; Smith v. Hiatt, D.C.M.D.Pa., 1944, 54 F.Supp. 481; Spann v. Zerbst, 5 Cir., 99 F.2d 336; Farnsworth v. Zerbst, 5 Cir., 98 F.2d 541, there was not in any event any evidence before this Court which would have justified any contrary conclusion. After hearing and seeing the witnesses this Court would accept Lt. Todd's testimony on this matter. Neither does Petitioner's testimony negative it.

[31] Smith was even given a neuropsychiatric examination before the charges were referred for trial. Court-Martial Record page 36.

Counsel for accused requested and was granted a ten day continuance to prepare for trial. Court-Martial Record page 31.

[32] At the opening of the trial the following colloquy took place (Court-Martial Record page 67):

"Law Member: Private Smith, you understand you are charged with a serious offense, involving a possible death penalty. Have you had ample time to confer with your Defense Counsel and with Lt. Lieberman?

"Accused: Yes, sir.

"Law Member: You are satisfied to proceed with the trial at this time?

"Accused: Yes, sir.

"Law Member: You are satisfied you

have had sufficient time to confer with your counsel to sufficiently try your case?

"Accused: Yes, sir."

[33] Petitioner's allegations were not substantiated by any facts but were inferences which he sought to adduce. The line-up was conducted with his Commanding Officer present to protect his rights and with (among others) the Chaplain of the Field, the Executive Officer of the Field, and two British Police Officers as witnesses. (Court-Martial Record page 39, and Transcript of Testimony page 38). The girls were kept in Lt. Todd's office in the Guard House, which opened onto the Parade Field, they were taken out one at a time, and the window of which petitioner complained had opaque panes (Transcript of Testimony page 38). There was not a scintilla of evidence that either girl watched the other while outside. Petitioner's allegations might well be termed his unsupported imaginings.

[34] Petitioner referred to Article of War 24, 10 U.S.C.A. § 1495, which is: "No witness before a military court, commission, court of inquiry, or board, or before any officer conducting an investigation, or before any officer, military or civil, designated to take a deposition to be read in evidence before a military court, commission, court of inquiry, or board, or before an officer conducting an investigation, shall be compelled to incriminate himself or to answer any question the answer to which may tend to incriminate him, or to answer any question not material to the issue when such answer might tend to degrade him."

[35] United States v. Bayer, 67 S.Ct. 1394, 1398.

[36] Miller v. Hiatt, 3 Cir., 141 F.2d 690; Eury v. Huff, 79 U.S.App.D.C. 289, 146 F.2d 17; Clarke v. Huff, 73 App.D.C. 351, 119 F.2d 204.

ly, such identification or physical examination is not within the doctrine of self-crimination or involuntary confession.[37] Physical inspection "does not call upon the accused as a witness, i. e. upon his testimonial responsibility."[38]

Petitioner further objects to the fact that a "Mrs. Kerry" was not called as a witness, evidently under the theory of denial of compulsory process. The prosecution "is not under a duty to place upon the witness stand every person who may have some knowledge of the crime which is the subject of the trial."[39] Nor is it bound to call any specific persons as witnesses,[40] and where application is to the Courts for compulsory process for witnesses to be produced at government expense, exercise of discretion by the trial court[41] is involved[42] which ordinarily would not be disturbed in a habeas corpus proceeding,[43] it must also appear that the witness if called would have been favorable to the accused.[44] This is true even where the question is raised on appeal as distinguished

from a collateral proceeding.[45] The mere fact that a witness was not present or was not called is not in itself sufficient to constitute a denial of Compulsory Process.[46]

Mrs. Kerry was with Miriam Cullum when Smith first accosted her. Petitioner contends she had made a statement in which she said "If I were in Court I would identify him" and that such statement was offered in evidence by the prosecution but ruled out and stricken from the record.[47] The Court-Martial Record does not show this witness requested by Smith, and he admits that no request was made of the Trial Court.[48] Lt. Todd, confirming the Court-Martial Record, testified that he called every witness requested by Smith and he had a full opportunity to interrogate them.[49] As to Mrs. Kerry, Smith was fully aware that her name had appeared in the case, but he did not desire her as a witness.[50] Had he been so positive of his own innocence it would seem that he would have been eager to interview her. Not only, therefore, has he failed to present a

---

[37] Wigmore points out the distinction between these two commonly confused terms, Wigmore on Evidence, Vol. 8, paragraph 2266.

[38] Wigmore on Evidence, Vol. 8, paragraph 2265.

[39] Curtis v. Rives, 1941, 75 U.S.App.D. C. 66, 123 F.2d 936, 940.

[40] Aycock v. United States, 9 Cir., 62 F.2d 612, certiorari denied 289 U.S. 734, 53 S.Ct. 595, 77 L.Ed. 1482.

[41] In military procedure the decision is by the appointing authority before trial and the Court after trial commences. Manual for Courts-Martial, United States Army, 1928, (corrected to April 20, 1943), paragraph 97, page 86.

[42] Casebeer v. Hudspeth, 10 Cir., 121 F.2d 914, para. 6–7, certiorari denied 316 U.S. 683, 62 S.Ct. 1272, 86 L.Ed. 1755; rehearing denied 317 U.S. 704, 63 S.Ct. 23, 87 L.Ed. 562; Gates v. United States, 10 Cir., 122 F.2d 571, Certiorari denied 314 U.S. 698, 62 S.Ct. 478, 86 L.Ed. 558; Neufield v. United States, 73 App.D.C. 174, 118 F.2d 375, certiorari denied Ruben v. United States, 315 U.S. 798, 62 S.Ct. 580, 86 L.Ed. 1199.

[43] Fitzgerald v. Sanford, 5 Cir., 142 F. 2d 445.

[44] Smith v. Squier, 9 Cir., 1943, 136 F. 2d 536, certiorari denied 320 U.S. 774, 64 S.Ct. 85, 88 L.Ed. 464.

[45] Robinson v. United States, 1942, 76 U.S.App.D.C. 29, 128 F.2d 322.

[46] Curtis v. Rives, supra.

[47] Transcript of Testimony, page 25. · We do not find this substantiated by the Court-Martial Record but in any event petitioner does not thereby show a favorable witness.

[48] Transcript of Testimony page 33. "Q. Did you request the Court itself to have Mrs. Kerry produced as a witness? A. No sir."

[49] Transcript of Testimony page 41. "Q. Did you comply with his request and call the witnesses he requested you to call? A. I called every one of them. "Q. Did you examine them? A. Yes sir. "Q. Did he examine them? A. Yes sir. "Q. Were their statements reduced to writing? A. They were."

[50] Lt. Todd testified (Transcript of Testimony page 42): "A. So far as from a prosecution standpoint it was not necessary. As far as from the Defense Standpoint, I asked Smith if he wanted her, and he said 'No'." Smith himself said (Transcript of Testimony page 17): " ° * * He asked me if I wanted to see her. I didn't know exactly whether I did or not. * * *"

question for consideration in habeas corpus but it is difficult to conceive how his rights as to witnesses could have been more carefully and fairly protected.

With reference to petitioner's contention that we must assume that the Court was influenced thereby, it is sufficient to say that even if such a statement of Mrs. Kerry was offered and refused, we do not understand it to be the law that we must presume that the Court did not perform its duty[51] in disregarding it, just as it would have instructed a jury to do.

The petition for the writ is accordingly denied and the rule to show cause dismissed.

---

[51] Neufield v. United States, supra.