Ex parte STEELE.

No. 210.

District Court, M. D. Pennsylvania.

July 27, 1948.

William L. Showers, of Lewisburg, Pa., for petitioner.

Arthur A. Maguire, U. S. Atty., of Scranton, Pa., Charles W. Kalp, Jr., Asst. U. S. Atty., of Lewisburg, Pa., and Major Thayer Chapman, Office of the Judge Advocate General of Washington, D. C., for respondent.

FOLLMER, District Judge.

A petition for writ of habeas corpus was filed by Leonard F. Steele, a military prisoner at the United States Penitentiary, Lewisburg, Pennsylvania, who had been convicted in a court-martial proceeding on a charge of violation of the 92nd Article of War, 10 U.S.C.A. § 1564; the specification being in substance that he did, while in England, on or about April 3, 1944, forcibly and feloniously, against her will, have carnal knowledge of a member of the Women's Land Army.

The petitioner alleges denial of due process and for that purpose sets forth double jeopardy, that he was inadequately

represented by counsel, that he was not advised of his right by one Captain Winfield at the time of the preliminary investigation, and that an identification parade was improperly conducted, that the investigation under Article of War 70, 10 U.S.C.A. § 1542, was neither thorough or impartial and not competently made, and that in the trial of the cause improper and incompetent evidence was introduced and that moreover the evidence was insufficient so that the crime was not proven beyond a reasonable doubt.

The petitioner was originally convicted at a trial commenced on June 2, 1944, but the Staff Judge Advocate, Headquarters, European Theater of Operations, being of the opinion that the record of trial contained errors injuriously affecting the substantial rights of the accused, and that the record was not free from doubt that the legal rights of the accused had been protected, recommended a rehearing,[1] and on July 17, 1944, General Eisenhower ordered such rehearing to be held.[2]

An entirely new court having been appointed, and new counsel designated, a second trial commenced on August 8, 1944, and the accused was again convicted. It is this second trial which is the subject of attack here.

As to the allegation of double jeopardy, such a plea of double jeopardy must be raised at the trial itself as a plea in bar, and is not properly raised in habeas corpus,[3] however, there was actually no double jeopardy present in the instant case.

The Articles of War provide "No person shall, without his consent, be tried a second time for the same offense; but no proceeding in which an accused has been found guilty by a court-martial upon any charge or specifications shall be held to be a trial in the sense of this article until the reviewing and, if there be one, the confirming authority shall have taken final action upon the case."[4] In the instant case a death sentence having been imposed at the first trial, there was both a reviewing and confirming authority. The authority to review or confirm includes the right and power to remand a case for rehearing.[5] General Eisenhower, as the Commanding General of the Army in the field, had ordered such rehearing and the subsequent trial was held in pursuance thereof and also in accordance with the requirements

---

[1] Respondent's Exhibit No. 2 (Record of Trial by General Court-Martial, June 2, 1944) at page 15A.

The Reviewing Authority in its consideration of the question discussed the legal problems involved, referring inter alia, at page 13A, to United States ex rel. Innes v. Hiatt, 3 Cir., 1944, 141 F.2d 664.

[2] Respondent's Exhibit No. 2 (Record of Trial by General Court-Martial, June 2, 1944) at page 50A.

[3] In re Wrublewski, Ensign, U.S.N., D.C.Cal., 71 F.Supp. 143; Sanford v. Robbins, 5 Cir., 115 F.2d 435; Sink v. Cox, Warden, 8 Cir., 142 F.2d 917; Crapo v. Johnston, Warden, 9 Cir., 144 F.2d 863.

[4] Article of War 40, 10 U.S.C.A. § 1511, see also discussion in Manual for Courts-Martial, U. S. Army, 1928 Ed., Corrected to April 20, 1943, Paragraph 68 page 53 et seq.

[5] As to the approval provided by Article of War 46, 10 U.S.C.A. § 1517, it is also provided in Article of War 47, 10 U.S.C.A. § 1518, that "The power to approve the sentence of a court-martial shall be held to include: * * *

"(c) The power to remand a case for rehearing, under the provisions of article 50½.", and as to confirmation under Article of War 48, 10 U.S.C.A. § 1519, it is provided in Article of War 49, 10 U.S.C.A. § 1520, that "The power to confirm the sentence of a court-martial shall be held to include: * * *

"(c) The power to remand a case for rehearing, under the provisions of article 50½.", and Article of War 50½, 10 U.S.C.A. § 1522, also provides "* * * When the President or any reviewing or confirming authority disapproves or vacates a sentence the execution of which has not theretofore been duly ordered, he may authorize or direct a rehearing. Such rehearing shall take place before a court composed of officers not members of the court which first heard the case. Upon such rehearing the accused shall not be tried for any offense of which he was found not guilty by the first court, and no sentence in excess of or more severe than the original sentence shall be enforced unless the sentence be based upon a finding of guilty of an offense not considered upon the merits in the original proceeding: * * *."

of military law, and there is therefore no basis for any contention of double jeopardy.

█ Petitioner has alleged inadequacy of defense counsel. The burden of proving such allegation is upon him. The mere fact that his present counsel, upon an analysis in retrospect of the cold record, believes he would either have asked or refrained from asking some question, or would have made some objection differently, does not sustain such burden of proof.[6] Under Military Law a commissioned officer appointed as counsel is considered competent counsel,[7] however, in the instant case, the evidence shows that certainly the assistant defense counsel was an attorney with the experience of twenty-two years practice,[8] and an examination of the trial record shows that the accused was ably and vigorously defended.

█ The allegation "That the petitioner was not advised of his rights pursuant to the provisions of the 24th Article of War [10 U.S.C.A. § 1495] at the time he was first questioned by Captain Winfield," needs little comment. The question of the admissibility in evidence of any statements made by accused at that time would not be a proper subject of habeas corpus.[9] The record however, shows that in the interview by Captain Winfield accused denied having been out, but on the contrary stated " * * * that he had been playing poker in the tent, * * *."[10] He admits that he made no admission of guilt to Captain Winfield.[11] At the trial no statement or confession of any kind by the accused was introduced into evidence, and Captain Winfield testified only to the fact that accused was in his command.[12] Captain Winfield was not the impartial investigator under Article of War 70.

█ Complaint is made that an identification line-up, wherein petitioner was identified, was not conducted fairly. In view of the fact that this was not a part of the investigation under Article of War 70, nor involved in the trial, and accused having been identified, not only by the victim, but by another witness, and having himself admitted at the trial that he was the person with the victim,[13] there would be no merit in the contention even were it a proper subject of habeas corpus.[14]

█ Petitioner alleges "That the investigation under the 70th Article of War was neither thorough nor impartial and further said investigation was not competently made." Petitioner claims that Captain Wilkins, the investigating officer, never interviewed him.[15] Aside from the question of the extent to which inquiry in habeas corpus may be had concerning the preliminary investigation as relating to due process, the record shows Major Wilkins duly appointed as investigating officer[16] and that he made a complete report showing a thorough and careful investigation, with the accused interviewed, warned of his rights, shown various exhibits and the testimony of interviewed witnesses, given an opportunity to interview witnesses, and to make any statements, which he declined to do. The record shows a comprehensive investigation conscientiously performed. Such a record cannot be collaterally attacked in habeas corpus.[17] However, after hearing the testimony of the Investigating

---

[6] Ex parte Smith, D.C.M.D.Pa., 72 F.Supp. 935, and cases there cited; Setser v. Welch, 4 Cir., 159 F.2d 703.

[7] Altmayer v. Sanford, 5 Cir., 148 F.2d 161.

[8] Respondent's Exhibit No. 3 (Personal Placement Questionnaire pertaining to Paschal Clinton Reese, Army serial number 34403663).

[9] Miller v. Hiatt, 3 Cir., 141 F.2d 690; Ex parte Smith, supra, Paragraphs 13–15.

[10] Respondent's Exhibit No. 1 (Record of Trial by General Court-Martial, Aug. 8, 1944) at page 31B.

[11] Transcript of Testimony of first hearing, at page 21.

[12] Respondent's Exhibit No. 1 (Record of Trial by General Court-Martial, Aug. 8, 1944) at page 62B.

[13] At the first hearing he also stated "I had been out with the girl and she had identified me." Transcript of Testimony of first hearing, at page 11.

[14] Ex parte Smith, supra.

[15] Transcript of Testimony of first hearing, at page 14.

[16] Respondent's Exhibit No. 1 (Record of Trial by General Court-Martial, Aug. 8, 1944) at page 22B.

[17] Ex parte Smith, supra, Paragraph 12, and cases there cited.

Officer, Major Wilkins,[18] there could be no doubt that a most thorough investigation was had, and the accused's rights most scrupulously protected.[19]

 The remaining contention is that there were errors in the trial, with improper and incompetent testimony admitted, and that the evidence was unsufficient to prove the crime beyond a reasonable doubt. It is not the function of habeas corpus to determine whether incompetent evidence was admitted and considered,[20] or to review possible errors of law in the trial,[21] or from the cold record to reweigh the testimony and pass upon the guilt, or innocence of the accused.[22] In this proceeding, however, no such errors in admission of evidence or rulings of law have been shown, counsel relying on the general proposition that a wrong decision had been reached on disputed facts. A careful examination of the trial record shows ample facts to sustain the verdict. The victim, 22 years of age, was shown by the uncontradicted testimony of two doctors to have been a virgin prior to the assault, her mouth was bruised and two teeth loosened, her clothing was torn and she had bruises on the thigh and lower leg. It would be sheer presumption for this Court, on the cold record, to attempt to re-evaluate the testimony in the face of such facts. Certainly in almost every trial there will be found some factual detail which may be construed or misconstrued by the defense as evidence of innocence. This merely creates the disputed issue of fact which it is the province of the trial court to resolve,[23] with the benefit of observation of the reactions of witnesses under examination, in a determination of guilt or innocence.[24] A charge of rape calls for no different rule. As was stated by Judge Wyche,[25] "I can think of no reason why the court should favor ravishers in applying exceptions to the general rule, especially since many rapists probably escape without even a trial, because their victims are unwilling to subject themselves to the terrible ordeal of a public trial, carrying with it humiliation, embarrassment and notoriety."

The case was ably considered by a Board of Review,[26] the record of the trial was legally sufficient to support the finding of guilty and no errors injuriously affecting the substantial rights of the petitioner appear. We find nothing which might be

---

[18] Transcript of Testimony of second hearing, at pages 2 to 16.

[19] As against this testimony is the bare statement of petitioner that he was never interviewed by Captain Wilkins. After two trials, with different counsel at each, coupled with his previous experience, this strange and unbelievable situation never occurred to him until at this late date. As to his credibility it must be also borne in mind that prior to the instant charge, he had during the period of his army service from February 10, 1940 to the violation of April 3, 1944, the grand total of six Courts-Martials, five of them involving absence without leave, totalling 141 days, and one offense of wrongfully striking a female civilian on the nose. He had also by reason of confinement lost 341 days. (Respondent's Exhibit No. 1, Record of Trial by General Court-Martial, Aug. 8, 1944, at pages 45B and 46B.) Moreover, he had in the present case, under oath, at the first trial, denied any intercourse, (Respondent's Exhibit No. 2, Record of Trial by General Court-Martial, June 2, 1944, at page 43A) and in general gave contradictory statements throughout. At the second trial in an unsworn statement submitted through counsel he gave an entirely different story admitting such intercourse. (Respondent's Exhibit No. 1, Record of Trial by General Court-Martial, Aug. 8, 1944 at page 83B.) The record also indicates that he escaped prior to the first trial. (Respondent's Exhibit No. 1, Record of Trial by General Court-Martial, Aug. 8, 1944 at page 29B.)

[20] Eagles, Post Commanding Officer v. United States, ex rel. Samuels, 329 U.S. 304, 67 S.Ct. 313, 91 L.Ed. 308.

[21] Sunal v. Large, 332 U.S. 174, 67 S. Ct. 1588, 91 L.Ed. 1982, rehearing denied 332 U.S. 785, 68 S.Ct. 29.

[22] In re Yamashita, 327 U.S. 1, 8, 66 S.Ct. 340, 90 L.Ed. 499.

[23] Bracey v. United States, 79 U.S. App.D.C. 23, 142 F.2d 85, 89.

[24] In re Yamashita, supra.

[25] United States v. Lovely, D.C., E.D. S.C., 77 F.Supp. 619, 627.

[26] Respondent's Exhibit No. 1 (Record of Trial by General Court-Martial, Aug. 8, 1944) at pages 2B to 9B.

construed as a denial of due process of law.

The rule to show cause is dismissed and the petition for writ of habeas corpus is denied.