**WHITE v. HUMPHREY, Warden.**
**No. 274.**

United States District Court.
M. D. Pennsylvania.
Sept. 19, 1953.

H. Clay Espey, Washington, D. C., Charles W. Kalp, Lewisburg, Pa., for petitioner.

Joseph C. Kreder, U. S. Atty., Scranton, Pa., W. Roger Fetter, Asst. U. S. Atty., Lewisburg, Pa., Lt. Col. Howard O. Husband, Judge Advocate General's Corps, Washington, D. C., for respondent.

FOLLMER, District Judge.

This habeas corpus proceeding was instituted by Darold J. White, a military prisoner at the United States Penitentiary, Lewisburg, Pennsylvania, who was convicted by a General Court Martial on a charge of unpremeditated murder.

Petitioner predicated his allegation of illegal restraint on seven separate issues which may be briefly summarized as follows:

1. Failure of law member to give instructions.

2. The "line up" or identification parade in which petitioner was identified was not conducted fairly, amounting to fraud on the court.

3. Petitioner was found guilty on circumstantial evidence which did not exclude any fair and rational hypothesis except that of guilt.

4. The evidence set forth in the record is not sufficient as a matter of law to find the defendant guilty beyond a reasonable doubt.

5. The law member committed prejudicial error in allowing the admission, over the objection of defendant, of testimony concerning petitioner's refusal to submit to a polygraph (lie detector) examination.

6. Error in admitting, over defendant's objection, certain confessions or admissions for the reason they were obtained by threats and promise of leniency.

7. No full and fair review of the trial by the Board of Review.

The Court Martial record is in evidence. The offense in question was committed on or about May 1, 1950, at Karlsfeld, Germany. Following the trial, the General Court Martial adjudged the petitioner guilty and pronounced sentence on June 2, 1950. The record of the trial was reviewed and approved by the Staff Judge Advocate on June 27, 1950, and forwarded for appellate review. On August 17, 1950, a Board of Review in the Office of the Judge Advocate General, Department of the Army, held that the record of trial was legally sufficient to support the findings and sentence. On August 25, 1950, following the completion of the appellate review, the sentence was ordered into execution. On December 15, 1952, by order of the Secretary of the Army, the original sentence of confinement for twenty years was reduced to seventeen and one-half years.

The Court-Martial which tried petitioner was legally constituted and had jurisdiction over petitioner at the time of trial and jurisdiction over the crime with which he was charged, as well as jurisdiction to impose the sentence which he received. Throughout petitioner's trial and the processes of the military appellate review of his conviction, the Articles of War, as amended, 41 Stat. 787, as amended by 62 Stat. 627, formerly 10 U.S.C.A. §§ 1471–1593 and the Manual for Courts-Martial, U. S. Army 1949, promulgated by Executive Order No. 10020, dated December 7, 1948, 13 Fed. Reg. 7519–7629 were in full force and effect.

The Uniform Code of Military Justice which was enacted into law by the Act of

May 5, 1950, 64 Stat. 108, 50 U.S.C.A. §§ 551–736, by the terms of Section 5 thereof, 50 U.S.C.A. note preceding section 551, provided that the Act would "become effective on the last day of the twelfth month after approval of this Act (May 31, 1951), or on July 1, 1950, whichever date is later". The Code, therefore, became effective on May 31, 1951. Pursuant to the provisions of Article 36 of the Code, 50 U.S.C.A. § 611, the President issued Executive Order No. 10214, dated February 8, 1951, prescribing the Manual for Courts-Martial, United States, 1951, and establishing May 31, 1951, as the effective date thereof, and providing in detail for the transition from procedures obtaining under the Articles of War and the Manual for Courts-Martial, U. S. Army 1949, to those established by the aforesaid Uniform Code and Manual 1951. The Executive Order provided, inter alia, as follows:

> "This manual shall be in force and effect in the armed forces of the United States on and after May 31, 1951, with respect to all court-martial processes taken on and after May 31, 1951: *Provided, That nothing contained in this manual shall be construed to invalidate any investigation, trial in which arraignment has been had, or other action begun prior to May 31, 1951; and any investigation, trial, or action so begun may be completed in accordance with the provisions of the applicable laws, Executive orders, and regulations pertaining to the various armed forces in the same manner and with the same effect as if this manual had not been prescribed:* \* \* \*." (Emphasis supplied.)

■ It is therefore apparent that the provisions of the Uniform Code of Military Justice and the trial and review procedures presented by the Manual for Courts-Martial, United States 1951, have no application to the petitioner's case.

It is the contention of the petitioner that the Court-Martial which tried him, while starting with jurisdiction over his person and the offense charged against him, lost its jurisdiction to convict and power to sentence him by denying him fundamental, constitutional and military due process of law guaranteed to him by the Constitution and Military Law.

As to the law member.

A substantial portion of petitioner's argument is directed toward what he considers prejudicial acts of omission as well as acts of commission of the law member during the trial of his case. In this connection, it should be noted that the Executive Order of February 8, 1951, above referred to, which provided in detail for the orderly transition from proceedings under the Articles of War and the Manual for Courts-Martial, U. S. Army 1949, to those established by the Uniform Code of Military Justice and the Manual for Courts-Martial, United States 1951, not only established May 31, 1951, as the effective date of the 1951 Manual, but also provided that any investigation, trial or action begun prior to May 31, 1951, "may be completed in accordance with the provisions of the applicable laws, Executive orders, and regulations pertaining to the various armed forces in the same manner and with the same effect as if this manual had not been prescribed".

In United States v. Berry (No. 69, decided March 18, 1952), 2 CMR 141, cited by petitioner, the court stated:

> "Although the Uniform Code of Military Justice was not effective at the time of trial in the case at bar, it seems appropriate to refer briefly to its related provisions. The only substantial change made by the Code in the status of the law member was to deprive him of the privilege of participation in the deliberations of the court-martial—and this necessarily imposed upon him the duty of instructing the tribunal's members as to the elements of the offenses alleged and of charging as to the presumption of innocence and comparable matters. \* \* \*"

■ The record discloses that after both sides had rested the law member advised the members of the Court-Martial in precisely the manner required by Article of War 31 and the 1949 Manual, and no additional instructions were requested by defense counsel. We find no error in so far as the advice or instructions given the court by the law member are concerned, and in any event the same would not be reviewable by habeas corpus.[1]

■ As to the alleged error of the law member in admitting the accused's confession in evidence.

The record discloses that after the law member ruled that petitioner's oral confession was admissible in evidence he advised the court as follows:

"The objection of the defense counsel as to the admissibility of the statement is overruled. At the same time I wish to point out to the court that 'the ruling of the law member that a particular confession or admission may be received in evidence is not conclusive of the voluntary nature of the confession or admission. It merely places it before the court. The ruling is final only on the question of admissibility. Each member of the court, in his deliberation upon the findings of guilt or innocence, may come to his own conclusion as to the voluntary nature of the confession or admission and accept or reject it accordingly. He may also consider any evidence adduced as to the voluntary

or involuntary nature of the confession or admission as affecting the weight to be given thereto.' "[2]

I find this to be in complete conformity with the requirements of the 1949 Manual (Par. 127a, page 158).

As to the ruling in relation to the lie-detector test.

On appellate review, the Board of Review by its holding necessarily found that there was no showing in the record that petitioner was or could have been prejudiced by the law member's ruling and that error, if any, under the circumstances, was harmless and did not constitute material prejudice to the substantial rights of the accused.[3]

As to the line-up.

■ The line-up in question was held at the accused's organization approximately three or four hours after the offense was committed. It was not a part of the pre-trial investigation conducted under the provisions of Article of War 46(b) [4] after charges had been preferred against the accused. Even though it had been part of the pre-trial investigation, and even if it had been improperly conducted, it still would not have deprived the General Court Martial of jurisdiction so as to empower this Court in a habeas corpus proceeding to invalidate the court-martial judgment.[5]

Furthermore, at the trial the accused was identified by two witnesses for the prosecution;[6] the accused's companion, Furry, testified for the defense and stated that he saw the accused in an al-

---

1. Meyers v. United States, 86 U.S.App.D. C. 320, 181 F.2d 802, 804; United States ex rel. Borday v. Claudy, D.C.M.D.Pa., 108 F.Supp. 778, 780.

2. Respondent's Exhibit C., Court-Martial record of trial, page 77.

3. Par. 100 b. of the Manual for Courts-Martial, U. S. Army 1949, provided (at page 106):
   "Effect of error.—The proceedings of a court-martial will not be held invalid nor the findings or sentence disapproved in any case on the ground of improper admission or rejection of evidence or

for any error as to any matter of pleading or procedure unless, after an examination of the entire proceedings, it shall affirmatively appear that the error has injuriously affected the substantial rights of the accused (A.W. 37). Error is not presumed to affect injuriously the substantial rights of an accused."

4. Formerly Article of War 70 (1928 Manual).

5. Humphrey v. Smith, 336 U.S. 695, 69 S.Ct. 830, 93 L.Ed. 986.

6. Respondent's Exhibit C., Court-Martial record of trial, pages 9, 11, 19, and 20.

tercation with the victim;[7] and petitioner, having elected to take the witness stand in his own behalf, admitted that he was the soldier who engaged in a fight with the deceased in the presence of the other witnesses who identified him.[8] There is, therefore, no merit to his complaint in regard to the line-up even were it a proper subject for habeas corpus.[9]

As to the sufficiency of the evidence.

■ As we said in Bigrow v. Hiatt, D.C.M.D.Pa., 70 F.Supp. 826, 830, affirmed 3 Cir., 168 F.2d 992, "It was for the trial court to decide whether it would believe or disbelieve certain testimony and to determine what weight it would give to any portion of the evidence." It seems almost trite to state that the question of whether the evidence is sufficient to sustain the charge in a trial by Court-Martial and to support a conviction is a matter for the Court-Martial hearing the charges and the military reviewing authorities, and not for the civil courts on habeas corpus.[10]

As to the failure of the Board of Review to give the case a full and fair review.

■ Petitioner predicates this claim on the fact that action was taken by the Board on August 17, 1950, the very day defendant's brief was received. The record discloses that defendant's counsel on July 10, 1950, requested time to file his brief. On August 2, 1950, defendant's counsel was advised that action by the Board of Review would be withheld until August 17, 1950. It does not follow that because the Board of Review made its findings the same day that it received defendant's brief the Board gave no con-

sideration to the brief. In accordance with the presumption of regularity in proceedings before boards and commissions,[11] and a like presumption which attaches to official acts and judicial proceedings,[12] it must be presumed that the Board of Review gave consideration to defendant's brief. In any event, assuming, arguendo, an irregularity on the part of the Board which is not apparent, the same would not be the basis for habeas corpus. As we stated in Adams v. Hiatt, D.C.M.D.Pa., 79 F.Supp. 433, 435,

> "The case was carefully reviewed by the Staff Judge Advocate and by a Board of Review. This is the process of appellate review provided by Congress to correct trial errors in prescribing the procedure for administration of military justice. This Court in habeas corpus does not sit in appellate review over such proceedings and the proceedings cannot be collaterally impeached for mere error or irregularity committed within the sphere of authority of the military court. * * *"

■ Finally, petitioner charges that he was denied the substance of a fair trial in that the court was dominated by the Trial Judge Advocate, prosecutor for the Commanding General. The record discloses an exchange between the President of the Court and the Trial Judge Advocate in which the latter displayed such a lack of fundamental good court matters as warranted a severe reprimand. However, a careful consideration of the whole record convinces me, as it did the Judge Advocate General, that the charge of "command domination over petitioner's trial by court

---

7. Respondent's Exhibit C., Court-Martial record of trial, pages 115 and 123.

8. Respondent's Exhibit C., Court-Martial record of trial, pages 131 and 132.

9. Ex parte Steele, D.C.M.D.Pa., 79 F. Supp. 428, 431; Ex parte Smith, D.C.M. D.Pa., 72 F.Supp. 935.

10. Hiatt v. Brown, 339 U.S. 103, 70 S. Ct. 495, 94 L.Ed. 691; McClellan v.

Humphrey, D.C.M.D.Pa., 83 F.Supp. 510, 515, affirmed U. S. ex rel. McClellan v. Humphrey, 181 F.2d 757.

11. Facchine v. Hunter, 10 Cir., 190 F.2d 200, 201.

12. Bute v. People of State of Illinois, 333 U.S. 640, 672, 68 S.Ct. 763, 92 L.Ed. 986; United States v. Fratrick, 7 Cir., 140 F. 2d 5, 7.

martial" is "without persuasive value."[13]

In Hiatt v. Brown, 1950, 339 U.S. 103, 70 S.Ct. 495, 498, 94 L.Ed. 691, the Supreme Court held, inter alia,

> "* * * It is well settled that 'by *habeas corpus* the civil courts exercise no supervisory or correcting power over the proceedings of a court-martial * * *. The single inquiry, the test, is jurisdiction.' * * * In this case the court-martial had jurisdiction of the person accused and the offense charged, and acted within its lawful powers. The correction of any errors it may have committed is for the military authorities which are alone authorized to review its decision. * *"[14]

■ It is not the function of a federal civil court to grant habeas corpus simply to re-evaluate the evidence.[15]

Petitioner does not challenge the jurisdiction of the person of the accused, the offense charged, or the propriety of the sentence imposed. He alleges, inter alia, as errors, failure to comply with the provisions of the Uniform Code of Military Justice and the Manual for Courts-Martial, United States 1951, which as has been indicated, were not applicable to the trial and review of his case, and then contends that the cumulative effect of these and other alleged errors denied him the substance of a fair trial and that this deprived the General Court-Martial of jurisdiction.

It is quite evident that although characterized as an attack on the jurisdiction of the Court-Martial petitioner's approach is in reality an attempt to secure a redetermination of the issues and a re-evaluation of the evidence, neither of which come within the purview of habeas corpus.

The Rule to Show Cause must accordingly be dismissed and the Petition for Writ of Habeas Corpus denied.

---

13. Action by the Judge Advocate General upon petition of defendant for relief under Section 12, Act of May 5, 1950, 50 U.S.C.A. § 740, Respondent's Exhibit B., page 7.

14. See also McClellan v. Humphrey, supra.

15. Burns v. Wilson, 346 U.S. 137, 142, 73 S.Ct. 1045.