# HUMPHREY, WARDEN, *v.* SMITH.

No. 457.   Argued March 30, 1949.—Decided April 25, 1949.

*Robert W. Ginnane* argued the cause for petitioner. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Campbell, Robert S. Erdahl* and *Philip R. Monahan.*

*Daniel F. Mathews* argued the cause and filed a brief for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

The respondent, Bernard W. Smith, an American soldier, was convicted by an Army court-martial for rape of one woman and assault with intent to rape another in violation of the 92d and 93d Articles of War.   10 U. S. C. §§ 1564 and 1565.   His punishment was dishonorable discharge, forfeiture of all pay and allowances,

and imprisonment for life. Army reviewing authorities approved the conviction and sentence, but the President reduced the punishment to sixteen years' imprisonment. This habeas corpus proceeding was brought in a District Court challenging the validity of the conviction. The District Court denied relief. 72 F. Supp. 935. The Court of Appeals reversed, ordering respondent's discharge. 170 F. 2d 61. We granted certiorari because the petition raises questions concerning important phases of court-martial statutory powers and the scope of judicial review of court-martial convictions.

We may at once dispose of the contention that the respondent should not have been convicted on the evidence offered. That evidence was in sharp dispute. But our authority in habeas corpus proceedings to review court-martial judgments does not permit us to pass on the guilt or innocence of persons convicted by courts-martial.[1]

It is contended that the court-martial was without jurisdiction to try respondent. If so the court-martial exceeded its lawful authority and its judgment can be invalidated despite the limited powers of a court in habeas corpus proceedings.[2] The soundness of this contention depends upon an interpretation of the 70th Article of War, the pertinent part of which is set out below.[3] It

---

[1] *Carter* v. *McClaughry,* 183 U. S. 365, 381; and see *In re Yamashita,* 327 U. S. 1, 8–9, and cases cited.

[2] *United States* v. *Cooke,* 336 U. S. 210; *Collins* v. *McDonald,* 258 U. S. 416, 418; see *In re Yamashita,* 327 U. S. 1, 8–9.

[3] "No charge will be referred to a general court martial for trial until after a thorough and impartial investigation thereof shall have been made. This investigation will include inquiries as to the truth of the matter set forth in said charges, form of charges, and what disposition of the case should be made in the interest of justice and discipline. At such investigation full opportunity shall be given to the accused to cross-examine witnesses against him if they

provides the manner in which pre-trial investigations shall be made preliminary to trials of soldiers before general courts-martial. A part of the language is that "No charge will be referred to a general court martial for trial until after a thorough and impartial investigation thereof shall have been made." The contention is that this requirement is jurisdictional in nature; that the kind of pre-trial investigation prescribed is an indispensable prerequisite to exercise of general court-martial jurisdiction; and that absent such prior investigation a judgment of conviction is wholly void.

Here there was an investigation. The claim is that it was neither "thorough" nor "impartial" as the 70th Article requires. The Court of Appeals, one judge dissenting, so held, and its reversal was rested on that finding. There was no finding that there was unfairness in the court-martial trial itself.

We do not think that the pre-trial investigation procedure required by Article 70 can properly be construed as an indispensable prerequisite to exercise of Army general court-martial jurisdiction. The Article does serve important functions in the administration of court-martial procedures and does provide safeguards to an accused. Its language is clearly such that a defendant could object to trial in the absence of the required investigation. In that event the court-martial could itself postpone trial pending the investigation. And the military re-

are available and to present anything he may desire in his own behalf either in defense or mitigation, and the investigating officer shall examine available witnesses requested by the accused. If the charges are forwarded after such investigation, they shall be accompanied by a statement of the substance of the testimony taken on both sides." 41 Stat. 759, 802, as amended 50 Stat. 724; 10 U. S. C. § 1542. See also Act of June 24, 1948, §§ 222, 231, 244, 62 Stat. 604, 633, 639, 642.

viewing authorities could consider the same contention, reversing a court-martial conviction where failure to comply with Article 70 has substantially injured an accused.[4]  But we are not persuaded that Congress intended to make otherwise valid court-martial judgments wholly void because pre-trial investigations fall short of the standards prescribed by Article 70.  That Congress has not required analogous pre-trial procedure for Navy courts-martial is an indication that the investigatory plan was not intended to be exalted to the jurisdictional level.

Nothing in the legislative history of the Article supports the contention that Congress intended that a conviction after a fair trial should be nullified because of the manner in which an investigation was conducted prior to the filing of charges.  Its original purposes were to insure adequate preparation of cases, to guard against hasty, ill-considered charges, to save innocent persons from the stigma of unfounded charges, and to prevent trivial cases from going before general courts-martial.

---

[4] Military reviewing authorities do not revise court-martial convictions for failure to follow pre-trial procedure unless it appears to them that such failure has injuriously affected the substantial rights of the accused.  CM 229477, *Floyd,* 17 B. R. 149, 153–156 (1943).  The Assistant Judge Advocate General testifying before the Committee on Armed Services stated: "If it appeared in the Office of the Judge Advocate General that the man had been deprived of any substantial right, such as the presentation of testimony in his own behalf, or something of that kind, it would be possible for us to say that the error injuriously affected the rights of the accused and that the sentence should therefore be vacated.  The case of real injury would be rare.  Ordinarily guilt or innocence is and should be determined at the trial and not by what occurred prior to the trial."  Hearings before Subcommittee No. 11, Legal, of House Committee on Armed Services on H. R. 2575, 80th Cong., 1st Sess. 2059–2060 (1947).

War Department, *Military Justice During the War,* 63
(1919). All of these purposes relate solely to actions
required in advance of formal charges or trial. All the
purposes can be fully accomplished without subjecting
court-martial convictions to judicial invalidation where
pre-trial investigations have not been made.

Shortly after enactment of Article 70 in 1920 the Judge
Advocate General of the Army did hold that where there
had been no pre-trial investigation, court-martial pro-
ceedings were void *ab initio.*[5] But this holding has been
expressly repudiated in later holdings of the Judge Advo-
cate.[6] This later interpretation has been that the pre-
trial requirements of Article 70 are directory, not man-
datory, and in no way affect the jurisdiction of a court-
martial. The War Department's interpretation was
pointedly called to the attention of Congress in 1947
after which Congress amended Article 70 but left un-
changed the language here under consideration.[7]

---

[5] CM 161728, *Clark.* See also to the same effect CM 182225,
*Keller*; CM 183183, *Claybaugh.*

[6] See *Floyd, supra,* n. 4; CMETO 4570, *Hawkins,* 13 B. R. (ETO)
57, 71–75 (1945); CM 323486, *Ruckman,* 72 B. R. 267, 272–274
(1947).

[7] Act of June 24, 1948, §§ 222, 231, 244, 62 Stat. 604, 633,
639, 642. In congressional committee hearings War Department
representatives were subjected to considerable questioning as to
whether pre-trial requirements should be made jurisdictional pre-
requisites. One of many statements supporting the War Depart-
ment's view was that of Under Secretary of War Royall, who
testified:

"However, our bill does not make it a jurisdictional factor, but
it does contemplate a thorough investigation. In the States in
which I have practiced law, preliminary investigations are never a
jurisdictional requirement. I know they are not in the Federal
courts . . . . We would be departing radically from accepted judicial
practice, generally throughout the United States, if we made that a

We hold that a failure to conduct pre-trial investigations as required by Article 70 does not deprive general courts-martial of jurisdiction so as to empower courts in habeas corpus proceedings to invalidate court-martial judgments. It is contended that this interpretation of Article 70 renders it meaningless, practically making it a dead letter. This contention must rest on the premise that the Army will comply with the 70th Article of War only if courts in habeas corpus proceedings can invalidate any court-martial conviction which does not follow an Article 70 pre-trial procedure. We cannot assume that judicial coercion is essential to compel the Army to obey this Article of War. It was the Army itself that initiated the pre-trial investigation procedure and recommended congressional enactment of Article 70.[8] A reasonable assumption is that the Army will require compliance with the Article 70 investigatory procedure to the end that Army work shall not be unnecessarily impeded and that Army personnel shall not be wronged as the result of unfounded and frivolous court-martial charges and trials.[9]

---

jurisdictional requirement. That is really the difference between the Durham bill and this, as I understand."

This statement and others in opposition to raising pre-trial investigations to a jurisdictional level appear at the following pages of the Hearings before Subcommittee No. 11, Legal, of House Committee on Armed Services on H. R. 2575, 80th Cong., 1st Sess. 1924–1925, 2058–2061, 2064–2065, 2146, 2152–2153 (1947).

[8] War Department, *Military Justice During the War*, 63 (1919); H. R. Rep. No. 940, 66th Cong., 2d Sess. 2 (1920).

[9] Secretary Royall in referring to the procedure told the House Committee: "We believe very strongly in it and we will provide for it as strongly as we can, without making it grounds for a technical appeal." Hearings before Subcommittee No. 11, Legal, of House Committee on Armed Services on H. R. 2575, 80th Cong., 1st Sess. 2152 (1947).

This court-martial conviction resulting from a trial fairly conducted cannot be invalidated by a judicial finding that the pre-trial investigation was not carried on in the manner prescribed by the 70th Article of War.[10]

*Reversed.*

MR. JUSTICE MURPHY, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE RUTLEDGE concur, dissenting.

Pre-trial investigation under the Seventieth Article of War performs a dual function. It saves the Army's time by eliminating frivolous cases; it protects an accused from the ignominy of a general court martial when the charges against him are groundless. These policies, of course, mean more than the protection of the respondent in this case. Their primary service appears when the defendant is clearly innocent. If the Article is ignored, and the court martial finds the defendant innocent, the error can never be corrected—the officers' time has been wasted and the defendant's record is forever besmirched by the words "general court martial." Yet if the prisoner is found guilty, there is still no sanction. For military authorities will not set aside a conviction unless the very accused asking reversal has been prejudiced. And if the trial has been fair, and resulted in conviction, who will say that the defendant has been prejudiced because preliminary investigation was wanting?

Unless a civilian court is able to enforce the requirement, then, it is not a requirement at all, but only a suggestion which should be observed. Today the Court

---

[10] District Courts and Courts of Appeal have not been in agreement on the question. *Henry* v. *Hodges,* 76 F. Supp. 968, 970–974; *Anthony* v. *Hunter,* 71 F. Supp. 823, 830–831; *Hicks* v. *Hiatt,* 64 F. Supp. 238, 242; *Waite* v. *Overlade,* 164 F. 2d 722, 723–724; *De War* v. *Hunter,* 170 F. 2d 993, 995–997.

adopts the latter alternative. It holds that the error of noncompliance with A. W. 70 is not jurisdictional. It makes A. W. 70 a virtual dead letter.

I cannot impute so bland a rule to the Congress. And no evidence of such sterility has been brought to our attention. What the Eightieth Congress thought about the problem is irrelevant, of course, for A. W. 70 was the product of the Sixty-Sixth Congress, in 1920, and respondent was tried in 1944, long before the Eightieth Congress convened. Had respondent's trial taken place in 1948, the result might be entirely different. The available evidence indicates clearly that the Sixty-Sixth Congress considered preliminary investigation vital before trial. The language of the Article is that of command—"no charge *will be referred*" without investigation. The report accompanying the 1920 statute, after referring to an investigation of unfairness in administering military justice, and concluding that "the personal element entered too largely into these cases," listed twenty-three changes in the law. The second change mentioned was this: "Speedy but thorough and impartial preliminary investigation will be had in all cases." H. R. Rep. No. 940, 66th Cong., 2d Sess., p. 2 (1920).

In 1924, just four years after A. W. 70 became the law, the Board of Review construed the language directly opposite to the Court's present interpretation. It held that the error was jurisdictional. CM 161728, *Clark.* Two later holdings, both in 1928, confirmed this view. CM 182225, *Keller;* CM 183183, *Claybaugh.* In *Keller,* the investigation took place, but was not "thorough." The Board held that a thorough investigation was "an absolute right given to the accused by statute." And in 1937 Congress reenacted the same language we are construing now, the same language the Board of Review expounded in 1924 and 1928. 50 Stat. 724. It seems extraordinary to say that reversals of the prior rulings

in 1943, CM 229477, *Floyd,* 17 B. R. 149, should govern when Congress has apparently acquiesced in the first, and contemporary, interpretations.

Congressional belief in the importance of preliminary investigation should not now be frustrated by a holding that noncompliance cannot be attacked by *habeas corpus.* I agree with the court below that the preliminary investigation in this case did not meet the proper standard, and would affirm the judgment.