**EVANS v. HUNTER.**

No. 1472.

United States District Court
D. Kansas.

Jan. 10, 1951.

Howard F. McCue (of McCue & McCue), Topeka, Kan., Clyde Vinson, San Angelo, Tex., on brief, for petitioner.

V. J. Bowersock, Asst. U. S. Atty., Malcolm Miller, Asst. U. S. Atty., Topeka, Kan., and Lieutenant-Colonel Reginald C. Miller, JAGD, Washington, D. C., for respondent.

MELLOTT, Chief Judge.

Petitioner, an inmate of the United States Penitentiary at Leavenworth, Kansas, has again assailed, in a habeas corpus proceeding, the validity of his detention. The Findings of Fact and Conclusions of Law, entered and made by The Honorable Eugene Rice, Judge Assigned, in the earlier case (Docket No. 1279 H.C.) following a complete hearing, filing of briefs and argument upon various motions are, by this reference, again found and made, except as otherwise indicated. The judgment entered in that case was affirmed, upon appeal to the Court of Appeals for the Tenth Circuit,[1] "without prejudice to the filing of a new application for a writ of habeas corpus after having first complied with the requirements of Article of War 53, 10 U.S.C.A. § 1525."

Following affirmance of the judgment in the earlier case, a petition was filed with the Judge Advocate General "for a new trial or for other relief under Article of War 53." Disposition of the petition is indicated in the "Memorandum Opinion" entered April 14, 1950, reading as follows:

"Memorandum Opinion

"Subject: Application for New Trial or for Other Relief in the case of Private Wallace E. Evans, 38132821 (CM 300287).

"1. Accused was tried by general court-martial at Hurth, Germany, on 21 March 1945 upon charges and specifications alleg-

1. Evans v. Hunter, 180 F.2d 354, 355.

ing two offenses of rape of Mrs. Elizabeth Pugge, in violation of Article of War 92 [10 U.S.C.A. § 1564] (Specifications 1 and 2, Charge I); assault with intent to do bodily harm upon Mrs. Elizabeth Pugge (Specification 1), housebreaking (Specification 2), and two further offenses of assault with intent to do bodily harm (Specifications 3 and 4), all in violation of Article of War 93 [10 U.S.C.A. § 1565] (Charge II). The court found accused not guilty of Specification 3, Charge II, and otherwise guilty as charged, making, however, certain minor exceptions and substitutions in its findings of guilty. Accused was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances due or to become due, and to be confined at hard labor for the term of his natural life. The reviewing authority approved the sentence. A board of review in a branch office of The Judge Advocate General with the European Theater of Operations, constituted under Article of War 50½ [10 U.S.C.A. § 1522], held the record of trial legally sufficient to support the findings of guilty and the sentence, which then was ordered executed. Evans' sentence to confinement subsequently has been reduced through clemency action to twelve years. He now presents an application for relief under Article of War 53.

"2. The record of trial shows that on the night of 9–10 March 1945 Mr. and Mrs. Joseph Pugge, aged 61 and 66 respectively, were at home in their apartment in Bickendorf, Germany. Between midnight and 1:00 a. m. they heard a knock on the door and a noise as though the window of the door were being broken. When Mr. Pugge unlocked the door, accused, intoxicated and armed, pushed past him into the apartment (Charge II, Specification 2). Accused then searched the apartment. While in the kitchen he motioned for Mr. Pugge to leave. At his wife's insistance, Pugge went into the hall leading to the door of the apartment. When Pugge heard his wife scream, he left the building to find assistance.

"Meanwhile Mrs. Pugge and accused were alone in the kitchen. She testified that accused threw her on the couch, held his pistol against her chest, hit her across the arm (Charge II, Specification 1), and forcibly had sexual intercourse with her (Charge I, Specification 1). He then departed.

"At about 2:30 a. m. accused returned to the Pugge home, held his pistol against one Anton Putz (Charge II, Specification 4), and motioned for Mr. Putz, Mr. Lohman, and Mr. Pugge, all of whom then were present, to leave the kitchen. They complied with his order and retreated into the hallway leading to the door of the apartment. Mrs. Pugge testified that during this visit accused was more intoxicated than he had been on his previous visit; that accused 'wanted' her to engage in an act of sodomy; that upon her refusal, he became brutal and threw her on the couch where he again had sexual intercourse with her against her will (Charge I, Specification 2).

"A defense witness, Private Matthew J. Miska, testified that accused was 'on guard' until about 2145 hours on 9 March 1945. Some time after midnight Miska visited the building where the Pugges lived, going both upstairs and downstairs; he did not see the accused there.

"There was evidence that accused had no authority to enter the Pugge home at the time in question.

"Accused elected to remain silent.

"3. Prior to trial the charges against accused were investigated pursuant to Article of War 70 [10 U.S.C.A. § 1542] by Captain Thomas E. Cotter, Jr. The report of investigation dated 13 March 1945 contains the following statement: 'The substance of the expected testimony of the following named witnesses either in oral or written form was made known to the accused who stated he did not desire to cross-examine such witnesses and therefore the same were not called and examined in the presence of accused * * *'

"The report then lists the names of seven persons, including the principal witnesses who subsequently testified at the trial. Two witnesses not so listed also testified, a Captain Richard S. Walker for the pros-

ecution and a Private Matthew J. Miska for the defense.

"4. The record of trial shows that when the court convened on 21 March 1945 accused was present along with Captain Hubert C. Morgan, special defense counsel, and First Lieutenant David Frank, the regularly appointed assistant defense counsel, First Lieutenant Richard L. Martin and two regularly appointed assistant defense counsel were absent, having been excused by the appointing authority. The accused was asked whom he wished to introduce as counsel and replied that he desired to be defended by Captain Morgan 'along with the regularly appointed defense counsel'. No request was made by the accused for the presence or assistance of Lieutenant Martin or the two absent assistants. No request for delay or motion for continuance was made by or on behalf of accused before or during the trial to enable him further to prepare for trial or to secure the assistance of additional counsel.

"5. Accused's petition under Article of War 53 was submitted by his attorneys, Howard F. McCue of McCue and McCue, Topeka, Kansas, and Clyde Vinson of San Angelo, Texas. In the petition it is contended that the court which tried accused was without jurisdiction for the reason that there was 'no thorough and impartial investigation of the truth of the charges' against him; that Articles of War 46(b) and 70 as amended effective 1 February 1949 [10 U.S.C.A. §§ 1517(b), 1542] now are applicable to his case, and that under said Articles as amended accused had the right to be confronted by 'his accusers prior to trial', which was not permitted him. It also is contended that the conviction of accused is void because accused was denied counsel and denied a fair trial in that his 'counsel did not have time and opportunity to consult with him and prepare for his defense'.

"Submitted with the petition is an affidavit of accused executed on 2 December 1949 in which he states that he was not guilty of the charges of rape and assault upon the prosecutrix; that he did not have sexual intercourse with her; that at no time has he made any admission to any person, including defense counsel at the trial, contrary to the statements made in the affidavit; that he did not testify in his own behalf because his defense counsel, Captain Morgan, advised him not to testify, stating to accused that the reason for such advice was that Captain Morgan had not had an opportunity to investigate the charges and did not know any of the alleged facts pertaining thereto.

"6. In January 1949 accused, represented by the same attorneys who now represent him, made application for a writ of habeas corpus to the United States District Court for the District of Kansas. On 8 August 1949 the court ordered discharged the writ previously issued, denied the petition, and remanded accused to custody. In its Findings of Fact and Conclusions of Law the court made the following pertinent rulings of law: the general court-martial which tried accused had jurisdiction over his person and the offenses with which he was charged; he was represented by counsel of his own selection and was not denied the assistance of counsel; he was not denied an opportunity to prepare his defense, if any he had; the alleged inadequacies in the pre-trial investigation did not affect the jurisdiction of the court; and accused was not denied a full and fair trial (Evans v. Hunter, U.S.D.C.Dist.of Kans. (HC 1297)). Upon appeal the Circuit Court of Appeals affirmed the judgment of the District Court on the sole ground that accused had failed to exhaust his remedy under Article of War 53 (Evans v. Hunter, [10 Cir., 1950, 180 F.2d 354]).

"In accused's petition under Article of War 53 portions of the testimony adduced in the United States District Court in said habeas corpus proceedings are set out, and it is urged that the testimony supports accused's present contentions.

"I have considered the testimony of the witnesses and the evidence in the District Court and am of the view that the Court in its Findings of Fact accurately summarized all the evidence germane to the issues presented to me upon accused's present

application. The summary reads in part as follows: '* * * On March 13, 1945, the charges were investigated by Captain Thomas E. Cotter, Jr., under the provisions of Article of War 70 and paragraph 35a or the Manual for Courts-Martial, U. S. Army, 1928. A written report of investigation was made by Captain Cotter * *. On March 14, 1945, the above charges were referred to a general court-martial for trial and on March 15, 1946 (sic) a copy of the charge sheet together with the report of investigation were served on the petitioner. Between March 15 and March 20, 1945, on at least three different occasions the petitioner consulted with Lieutenant David Frank, one of the assistant defense counsel designated in the order appointing the court-martial. On at least one occasion he also conferred with Lieutenant Richard L. Martin designated as defense counsel in the order appointing the court-martial. Petitioner was informed that Lieutenant Martin was engaged in another case and probably would be unavailable for his trial. The petitioner then requested Lieutenant Frank to ask Captain Hubert C. Morgan to represent him. Captain Morgan conferred with the petitioner on March 20, 1945, and was given the statements of expected witnesses. Captain Morgan conferred with the petitioner again on the morning of March 21, 1945, before his case was called for trial. Trial of the charges against the petitioner was held on March 21, 1945. When the court-martial convened the petitioner was present with Captain Morgan and Lieutenant Frank. The record of trial shows that Lieutenant Martin and two of those named as assistant defense counsel were absent, having been excused by the commanding general who appointed them. The accused was asked whom he wished to introduce as counsel and replied that he desired to be defended by Captain Morgan "along with the regularly appointed defense counsel." No request was made to the court-martial by the petitioner for the presence or assistance of Lieutenant Martin or the two absent assistants. No motion for a continuance was made by the petitioner before or

during trial to enable him to prepare for trial or secure the assistance of additional counsel, in fact, no motion for a continuance was made at any time and the parties proceeded to trial. * * *'

"7. Although I have not considered them in determining whether or not the record of trial is legally sufficient, as they bear on the veracity of the present assertion of innocence by the accused, I have adverted to the records of the Department of the Army recording the results of an interview of accused upon his admission to the United States Penitentiary, Leavenworth, Kansas. The following appears therein: 'Inmate's own statement: States he pleaded not guilty that he had gone into the house in question to look for another soldier guard who he thought was in the house. When no one answered his knock he broke the glass out of the door with his pistol after which the owner opened the door and admitted him. He says also that he was pretty drunk at the time, that he remembers having intercourse with the woman in question but that she was willing and no force was used.'

"8. Articles of War 46(b) and 70 as amended are not applicable to this case (see E.O. 10020, 7 Dec 48; MCM, 1949, p. IX).

"The pre-trial investigation of the charges against accused was conducted in substantial conformity with Article of War 70 then in effect, but, even if there had been a failure substantially to comply with said Article, the court-martial would not have been deprived of jurisdiction (Humphrey v. Smith, 1949, 336 U.S. 695 [69 S.Ct. 830], 93 L.Ed. 774 [986]).

"The cases cited by counsel for accused do not support his contentions that accused was denied the right of counsel and that counsel at the court-martial did not have opportunity to prepare accused's defense.

"It appears that accused was represented by individual counsel of his own choice and by the regularly appointed assistant defense counsel, and that adequate opportunity was afforded them to prepare accused's defense. It appears that all material witnesses were present and testified.

No requests for a continuance was made, and there appears no ground to believe that any right of the accused was prejudiced by proceeding with the trial without further delay.

"Counsel at the trial intelligently and diligently sought to protect the interests of accused, cross-examined the prosecution's witnesses, and otherwise performed their duties adequately and in a responsible manner. There is nothing to indicate that counsel for the defense lacked competence, or that their actions resulted in denial of a fair trial.

"I find that accused was not denied due process of law. The procedures provided by military law were applied in a fundamentally fair way. The court had jurisdiction over accused and over the offenses of which he was found guilty. The record of trial is free of error injuriously affecting accused's substantial rights, and the evidence is legally sufficient to support the findings. The sentence is legal and not excessive.

"From all the facts and information before me, including the record of trial, the petition and other matter presented by accused I do not believe that an injustice has resulted from the findings or the sentence.

"9. Good cause for the granting of a new trial or alternative relief under Article of War 53 does not appear, and, accordingly, the petition will be denied.

> "/s/ E. M. Brannon
> E. M. Brannon
> Major General, USA
> The Judge Advocate General"

At the hearing in the instant proceeding, petitioner introduced in evidence the transcript of the hearing in the earlier case before Judge Rice, including the record of trial by the General Court-Martial and an affidavit of Captain Hubert C. Morgan. Respondent introduced in evidence an authenticated copy of the proceedings under Article of War 53, the oral testimony of the law member of the court-martial which tried petitioner, and affidavits of various individuals who were members of the court-martial or participated in the trial, including those who had been appointed defense counsel.

Morgan's affidavit shows, as did his testimony before Judge Rice, that he was "procured" to represent petitioner at the trial before the court-martial, "shortly before the trial" and that he did not "discuss the matter of defense with Evans or any witnesses except just before the trial." The reason given by him was that his "outfit was stationed a considerable distance from the point where Evans was held * * * and * * * [his] combat duties did not permit time to make an investigation of the case, since * * * [he] was notified to defend him [Evans] only a short time before the trial." Inasmuch as the principal issue now before the court is whether petitioner was denied due process of law in that he was deprived of an opportunity to consult with his counsel and they "were denied time and opportunity to consult with * * * [him] and to investigate the case and prepare for * * * [his] defense," the court, at this juncture, elaborates upon the findings heretofore made by Judge Rice.

The charge sheet, following a pre-trial investigation, together with a report of investigation, was served on petitioner on March 15, 1945. Officers Martin, Frank and two others had been designated defense counsel to represent several soldiers charged with serious offenses. Martin was actively working on a murder case, the first scheduled for trial. Frank was sent to the stockade immediately to interview petitioner. At that time petitioner evinced a desire to have Captain Morgan defend him. The next day Martin went with Frank to see petitioner, at which time he confirmed the request previously made to have Captain Morgan as his special defense counsel. Frank then gave Captain Morgan the charges and accompanying papers. He (Frank) was "reasonably certain this occurred at least four days before Evan's subsequent court-martial on March 21, 1945." Frank was present throughout the trial.

■ ■ · In the "Memorandum Opinion," copied at length above, appears a partial summary of the findings made by Judge Rice. The view of the writer of the opinion that the findings "accurately summarized all the evidence germane to the issues" is shared by the writer of this opinion. Nor can this court adopt the postulate urged upon it by counsel that "petitioner found himself deserted by the regularly appointed defense counsel Martin, who had discussed the case with him, saw Captain Morgan pass nearby and asked that he be named as one of his counsel." Petitioner testified personally about the visits with Frank and Martin and quoted Frank as saying "he would contact anyone I might know. So I told him Captain Morgan." (Tr. 11.) When asked whether he had known Captain Morgan, he replied, "Yes, sir." He also related what occurred when he and Morgan were in conference the day before the trial. (Tr. 13.) Morgan, although at that time he had not been admitted to the bar, had attended law school and had served as defense counsel in other court-martial proceedings. (Tr. 26.) Moreover, he appears to have made what his adversary characterizes as a "vigorous defense." Were this court disposed to disturb the findings made by Judge Rice, it would feel in duty bound to find categorically that Captain Morgan had undertaken petitioner's defense at his behest and pursuant to his specific request. For present purposes, however, it is sufficient to adopt those made in the earlier case, together with the conclusions reached, numbered 2, 3, 4 and 5, especially No. 4, that there is no evidence

petitioner was denied the assistance of counsel.

The questions of law, discussed by the parties upon brief, arise only if the court has erred in concluding there is no evidence petitioner was denied the assistance of counsel, even though, admittedly, he was placed upon trial the next day after Captain Morgan had undertaken his defense. The contention is that he was forced "to trial with such expedition as to deprive him of the effective aid and assistance of counsel."[2] Respondent counters that petitioner is bound by the acts of his counsel, inasmuch as he had not complained to the court that there was any irregularity in connection with his selection or designation,[3] although he had ample opportunity to do so.[4] Inferentially, petitioner also assails the competency of Captain Morgan to furnish him effective assistance, stating: "This was * * * [his] first defense of a general court-martial case." The statement is erroneous; but, even if true, would not justify this court in releasing petitioner from custody.[5]

■ One other matter may be noticed briefly. In the affidavit of Hubert C. Morgan it is stated he "understood that this was the first rape case to be tried by this court[martial] on German soil, and that a conviction was necessary for disciplinary reasons." Implicit in this statement is a charge, met by the respondent through the filing of counter affidavits, that petitioner was convicted for "disciplinary reasons" rather than upon the evidence. Assuming, for present purposes, that the issue should be resolved, it is decided in respondent's favor. The af-

2. White v. Ragen, 324 U.S. 760, 764, 65 S.Ct. 978, 980, 89 L.Ed. 1348; Cf. House v. Mayo, 324 U.S. 42, 65 S.Ct. 517, 89 L.Ed. 739; Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377; Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158

3. Tompsett v. State of Ohio, 6 Cir., 146 F.2d 95, certiorari denied, 324 U.S. 869, 65 S.Ct. 916, 89 L.Ed. 1424; Flackman v. Hunter, D.C., 75 F.Supp. 871, appeal dismissed, 10 Cir., 173 F.2d 899.

4. Whelchel v. McDonald, 1950, 71 S.Ct. 146.

5. Moss v. Hunter, 10 Cir., 167 F.2d 683, certiorari denied, 334 U.S. 860, 68 S.Ct. 1519, 92 L.Ed. 1780. Cf. Hayes v. Hunter, D.C., 83 F.Supp. 940.

fidavits of the members of the court-martial and all others having any part in the proceeding, save only Morgan, conclusively establish that there was no policy in the Division requiring a conviction for disciplinary purposes and that each member of the court exercised his free judgment in acquitting petitioner upon one of the charges and convicting him upon the others.

This court is content to rest its decision upon the findings which have been made, the conclusions which have been reached and the brief discussion of the several questions raised. It would serve no useful purpose to review the language used by it in other cases.[6] The Supreme Court has recently reiterated that "by habeas corpus the civil courts exercise no supervisory or correcting power over the proceedings of a court-martial * * *. The single inquiry, the test, is jurisdiction."[7] The inquiry of this court probably should have been limited strictly to determining whether the court-martial had "jurisdiction of the person accused and the offense charged, and acted within its lawful powers", leaving the correction of any errors it may have committed to the military authorities;[8] but inasmuch as the other questions were argued upon brief, the court has seen fit to answer them briefly.

Counsel for the respondent should prepare, for the court's signature, an order discharging the writ, remanding the petitioner to the custody of the respondent and dismissing the petition. Settle in accordance with the Federal Rules of Civil Procedure, 28 U.S.C.A., and the Rules of Practice of this court.

---

6. In Anthony v. Hunter, D.C., 71 F.Supp. 823, 828, and Wade v. Hunter, D.C., 72 F.Supp. 755, 761, reversed on other grounds, 10 Cir., 169 F.2d 973, affirmed, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974, opinion was expressed that questions of fundamental justice protected by the Due Process Clause might be raised dehors the record in a habeas corpus proceeding by one held under judgment of a court-martial.

7. Hiatt v. Brown, 339 U.S. 103, 110, 111, 70 S.Ct. 495, 498, 94 L.Ed. 691. See also Whelchel v. McDonald, 1950, 71 S. Ct. 146.

8. Authorities cited in footnote 7. In re Yamashita, 327 U.S. 1, 66 S.Ct. 340, 90 L.Ed. 499; Swaim v. United States, 165 U.S. 553, 562, 17 S.Ct. 448, 41 L.Ed. 823; Humphrey v. Smith, 336 U.S. 695, 69 S.Ct. 830, 93 L.Ed. 986.