SCHILDER, Warden v. GUSIK.

No. 10978.

United States Court of Appeals Sixth Circuit.

April 1, 1952.

658

Lt. Col. Frederick C. Lough, Office of the Judge Advocate General, Washington, D. C., R. J. O'Donnell, Loren G. Windom, Columbus, Ohio, on the brief, for appellant.

Morris Morgenstern, Cleveland, Ohio, for appellee.

Before SIMONS, McALLISTER and MILLER, Circuit Judges.

SIMONS, Circuit Judge.

In an appeal by the warden of the Federal Reformatory at Chillicothe, Ohio, from an order of discharge in a habeas corpus proceeding releasing the appellee from custody while under sentence of a Military Court for murder, we decided in Schilder v. Gusik, 6 Cir., 180 F.2d 662, that Gusik had not exhausted his remedies under the Articles of War because he had not availed himself of the new remedy provided by Article 53, 62 Stat. 639, now art. 73, 50 U.S.C.A. § 660, and so ordered the dismissal of the writ. Upon appeal, after grant of a petition for certiorari, the Supreme Court agreed with our views on the main issue tendered under Article 53 but directed a different disposition of the case. Since trial in the district court had ended

before the effective date of that Article, the court reversed and directed that we hold the case pending resort to the new remedy. Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146.

A new review having been sought under the provisions of Article 53, and the Acting Judge Advocate General having found upon extensive investigation and after full hearing that good cause for the granting of relief did not appear, and having denied Gusik's petition, the cause is now before us for the second time for a decision upon the merits.

When the petition for the writ of habeas corpus was heard in the district court, it challenged the fairness and impartiality of a pre-trial investigation, the lack of effective assistance of counsel, and failure of the trial Judge Advocate to call all material witnesses. In his petition for review under Article 53, Gusik added numerous other contentions, claiming that the pre-trial statement made by him was obtained through duress, that hearsay evidence was received against him, that the findings of the court-martial were invalid because not made by the unanimous vote of the Judges of the Court, that there was failure to show authority to appoint courts-martial, and that the law-member thereof was not an officer of the Judge Advocate General's Department.

■ Our first inquiry must necessarily be directed to the permissible scope of this review. This is a habeas corpus proceeding and it is clearly settled that our authority to review court-martial judgments does not permit us to pass on the guilt or innocence of persons convicted by courts-martial. Humphrey, Warden, v. Smith, 336 U.S. 695, 69 S.Ct. 830, 93 L.Ed. 986; Carter v. Mc-Claughry, 183 U.S. 365, 381, 22 S.Ct. 181, 46 L.Ed. 236, in Re Yamashita, 327 U.S. 1, 66 S.Ct. 340, 90, L.Ed. 991. It may be observed, however, that there was substantial evidence to support the charge of murder, that the record was reviewed by the Staff Judge Advocate of the Port of Leghorn, Italy, by the Commander of the Port of Leghorn, by the Board of Review in the office of the Judge Advocate General, and by the Judge Advocate General and that

each of the reviewing authorities found the evidence sufficient to sustain the findings and sentence. The Judge Advocate General, however, recommended that the sentence be reduced from life imprisonment to sixteen years, a recommendation accepted by the Secretary of the Army. The record has now again been reviewed by the Acting Judge Advocate General, with like result.

■ The 70th Article of War now art. 30, 50 U.S.C.A. § 601 provides that no charge shall be referred to a general court-martial for trial until after a thorough and impartial investigation thereof shall have been made, with full opportunity to the accused to cross-examine witnesses against him and to present anything that he may desire in his own behalf. It is not contended here that there was no pre-trial investigation. The claim is that it was neither thorough nor impartial, as the 70th Article requires. Such contention was not made at the court-martial but was first presented at the hearing in the district court. Had it been made at the trial, the court-martial itself, or the military reviewing authorities, could have postponed trial or set aside conviction, pending further investigation. In any event, the Supreme Court has held, in view of its original purpose and legislative history, that Article 70 does not deprive general courts-martial of jurisdiction so as to empower courts in habeas corpus proceedings to invalidate court-martial judgments, Humphrey v. Smith, supra.

■ The contention that Gusik, when interrogated, was not advised of his rights under Article of War 24, now art 32, 50 U.S.C.A. § 602 has no merit. While it is true that he was not so advised when first questioned at the scene of the crime, at a time when it was thought that the killings were justifiable and that no charges would be brought against him, yet when the subsequent investigation disclosed that Gusik might be guilty of murder, he was advised in all interrogations of his rights under Article 24. That Article was read to him prior to questioning upon each occasion.

■ Gusik was not denied effective assistance of counsel. He was represented

by Clarence W. Burks, a regularly appointed defense counsel on the general courts-martial Board. Burks had a Bachelor of Arts degree from Harvard University, a Bachelor of Laws degree from Harvard Law School, and a Master of Laws degree from Yale. He was highly experienced in trying court-martial cases. He succeeded in saving Gusik from the death sentence and his trial record achieved a mitigation of the sentence imposed. Out of four counsel available to Gusik, Burks was, undoubtedly the best qualified and was asked for by Gusik. Some suggestion is made that at one time Gusik requested another counsel, Lieutenant Ryan. It is doubtful on this record that he made such request but, if he did, Ryan's unavailability was admitted at the trial. It is also to be noted that not at any time did the appellee complain to the court-martial of his defense counsel. Burks had repeated interviews with him, examined all the statements of witnesses taken during the pre-trial investigation, and it appears from the record made in review proceedings under Article 53 that he received little help from his client. If hearsay evidence was at times permitted without objection, and leading questions not complained of, that is true in most civil or criminal trials and is rarely prejudicial. In any event, we are not concerned with errors at the trial that do not destroy the fairness of the inquiry. As to the complaint of mistreatment, it was not only vigorously denied but the supplemental record, upon Article 53 review, clearly supports the statement—that Burks was never advised by Gusik of such mistreatment, so as to permit him to challenge it. These contentions but appear as post facto grasping at straws and, in any event, involve questions of fact expressly or by inescapable inference determined by the military courts.

■■ The complaint that material evidence was suppressed must be rejected. Gusik bases it upon failure to call certain Italian guards as witnesses. His counsel had access to their statements. It is now evident that their evidence would have been of little advantage to Gusik and might have been dangerous to his case. The judgment of competent counsel as to the value of evidence may not now be impeached and the prosecution's failure to call witnesses is seldom, if ever, an unfair surprise to the defendant. Harris v. Sanford, D.C., 78 F. Supp. 963, Robinson v. United States, 76 U.S.App.D.C. 29, 128 F.2d 322.

■ Article of War 43 now art. 52, 50 U.S.C.A. § 627, provides that the findings of a court-martial must be by unanimous vote when an accused is found guilty of an offense where the death penalty is mandatory. Invalidity of the decision is here attacked because it was made by two-thirds of the court. But the death penalty was not mandatory, nor was it so adjudged. Unanimity was not required and·the findings were valid. Nor may the court-martial's decision be invalidated because the authority of the President to appoint general courts-martial was not cited: "The order appointing general courts-martial, when issued by a commander specially empowered by the President, need not cite the order of the President. Manual for Courts-martial, United States Army, page 205."

■ The final contention is that the proceedings were void because the law-member of the court was not a member of the Judge Advocate General's department and that the court-martial was, therefore, not properly constituted under Article of War 8, which requires, for the court-martial, a law-member "who shall be an officer of the Judge Advocate General's department except, that when an officer of that department is not available for the purpose, the appointing authority shall detail instead an officer of some other branch of the service selected by the appointing authority especially qualified to perform the duties of law-member." The contention is that there were available at Leghorn officers of the Judge Advocate General's department who could have been called to help constitute the court. This seeks to apply to the term "available" a narrow and restricted connotation. It has been rejected not only by the Judge Advocate General, C.M. 231, 963 Hatteberg, 18 B.R., 349, 368, Digest of opinions of Judge Advocate General, 1912–1940 Sec. 365(9) but by the

Second Circuit in Henry v. Hodges, 171 F. 2d 401, 403. It was there reasoned by Judge Learned Hand: "The whole question is especially one of discretion * * *. The commanding officer who convenes the court must decide what membership will be least to the 'injury of the service,' and what officers are 'available.' 'Available' means more than presently 'accessible'; it demands a balance between the conflicting demands upon the service, and it must be determined on the spot." We are unable to say that there was an abuse of discretion and this is the first time in all the various reviews that the issue has been raised.

Reversed with instructions to dismiss the writ and to remand the appellee to the custody of the warden to complete the serving of his sentence.