Edward S. DICKENSON, Petitioner,

v.

Colonel James W. DAVIS, Commandant, United States Disciplinary Barracks, Fort Leavenworth, Kansas, Respondent.

No. 2187.

United States District Court
D. Kansas.

Aug. 6, 1956.

422

Homer Thomas Davis, Leavenworth, Kan., and Guy Emery, Washington, D. C., for petitioner.

William C. Farmer, U. S. Atty., Topeka, Kan., Milton P. Beach, Asst. U. S. Atty., Kansas City, Kan., and Lt. Col. Cecil L. Forinash, J.A.G.C., U. S. Army, Washington, D. C. (Lt. Col. Peter S. Wondolowski, J.A.G.C., U. S. Army, Washington, D. C., on brief), for respondent.

MELLOTT, Chief Judge.

Petitioner assails the validity of his detention by the Commandant of the United States Disciplinary Barracks at Fort Leavenworth, Kansas. This court has jurisdiction under Title 28 U.S.C.A. § 2241 et seq.

No factual issue is raised. The voluminous record of trial of petitioner by a general court-martial and the subsequent proceedings based thereon have been made a part of the record in this proceeding and are referred to at length in the application for the writ, the return and the briefs. They disclose the following facts:

Petitioner enlisted in the army on March 31, 1950, for three years. After a period of basic training, he was transferred to Korea on September 22, 1950. On November 4, 1950, he was captured by the enemy. After the armistice, he refused to return to the United Nations forces during operation "Big Switch," which provided for the exchange of prisoners who desired to be repatriated. Some two months later he requested repatriation and was returned to military control on October 21, 1953. On November 21, 1953, he was returned to the United States and attached to the Medical Holding Detachment, Walter Reed Hospital, Washington, D. C. He was granted thirty days sick leave, plus three extensions of fourteen days, ten days and ten days, and six days were spent in the Veterans Administration Hospital at Mountain Home, Tennessee. On January 21, 1954, he returned to duty. While on leave, he received full pay and allowances.

Under normal conditions, petitioner's term of enlistment would have expired on or about April 1, 1953. However, on

or about April 23, 1952, by Executive Order 10345, 10 U.S.C.A. § 628 note, enlistments expiring between July 1, 1952 and June 30, 1953, were extended for nine months. The involuntary extension of petitioner's enlistment, therefore, made him eligible for discharge on or about the 1st of January, 1954. The Department of the Army, by Circular 38, dated 15 May 1952, provided for the reduction of involuntary extensions of enlistment. The portion of the Circular, alleged in the petition to be applicable to petitioner, provided that overseas commanders would return individuals affected by the Circular, who were serving on active duty and who did not desire to re-enlist or voluntarily extend their enlistments, so as to arrive in the United States "no later than the first day of the period specified in Column 3, paragraph 9." The petition further alleges that the class to which petitioner belonged would have been discharged on April 30, 1953, and "presumably the Order would have been obeyed in April, 1953, had the accused not been a Prisoner of War at the time." Also, that when petitioner was returned to Washington, "nothing then remained to be done except the issuance of his discharge"; but such discharge was not issued. A dishonorable discharge was issued, however, on January 4, 1956, after approval of the conviction of the prisoner by the United States Court of Military Appeals, referred to in the next paragraph.

On January 22, 1954, court-martial charges were preferred against petitioner, alleging that he, while a prisoner of war, had committed the offenses of communicating with the enemy and informing on other prisoners, in violation of Articles 104 and 105 Uniform Code of Military Justice, 50 U.S.C.A. §§ 698 and 699. Appropriate steps were taken for the constitution of a court-martial. The trial lasted several days; and upon conviction of most of the specifications of the two charges, petitioner was sentenced to dishonorable discharge from the service, forfeiture of all pay and allowances, and confinement at hard labor for ten years. The record of trial, accompanied by the review of the Staff Judge Advocate, was forwarded to the convening authority, who approved the sentence on July 13, 1954. Upon review by a Board of Review, one part of the finding of guilty under the Specification of Charge I was set aside; but the other findings of guilty and the sentence were approved. The United States Court of Military Appeals granted the petitioner a review and, in an opinion dated September 30, 1955, affirmed the decision of the Board of Review. Thereafter, petitioner filed two motions for reconsideration by the Court of Military Appeals. The first was denied on November 9, 1955, and the second on December 19, 1955, after the instant proceeding had been instituted.

The principal point discussed by counsel upon brief is that petitioner was entitled to a discharge soon after his return to the United States on November 21, 1953, and, while "not formally discharged from the military service prior to his arraignment and trial," that he had been "arbitrarily and unlawfully held in service for sixty days after the expiration of his term of service primarily, if not solely, for the purpose of using him as a lure to induce the twenty-two American 'non-repatriate' prisoners to return to United States control." Specifically, it is contended that Article 2(1) of the Uniform Code of Military Justice, Title 50 U.S.C.A. § 552(1), especially if examined in the light of United States ex rel. Toth v. Quarles, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. ——, and the legislative history as disclosed by the Congressional Reports, did not confer upon the court-martial jurisdiction to try petitioner under the circumstances shown by this record; that he was not, on the date charges were preferred against him, subject to court-martial as a member of the Army because: (a) his term of enlistment had ended upon his return to United States on November 21, 1953, and on that date he was entitled to his discharge; (b) that no

charges having been preferred or action taken to place him in arrest or confinement for two months after his return to the United States, he could be prosecuted only in a court of general jurisdiction and could not be brought to trial by court-martial; and (c) that Section 2(1) as amended "is merely a restatement of what has always been the law— that a man may be held for trial after expiration of his enlistment, and before discharge * * * [only if] he has been arrested, confined or charged on or before the last day of his term [of enlistment]."

■ At the threshold, this court is confronted with numerous decisions by the Supreme Court and Courts of Appeal, pointing out the limitations upon its power to grant relief, by habeas corpus, to those convicted by courts-martial. Some of the most recent are: Humphrey v. Smith, 336 U.S. 695, 69 S.Ct. 830, 93 L.Ed. 986; Hiatt v. Brown, 339 U.S. 103, 70 S.Ct. 495, 94 L.Ed. 691; and Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508. Cf. Day v. Davis, 10 Cir., 235 F.2d 379, and Colepaugh v. Looney, 10 Cir., 235 F.2d 429. It would serve no useful purpose to quote at length from these decisions. Collectively, as pointed out in the Day v. Davis case, supra, they seem to hold that review by a court such as this is limited to the question whether petitioner was denied any basic right guaranteed by the Constitution.

At the time of petitioner's appeal to the United States Court of Military Appeals, he did not deny that he was subject to the provisions of the Uniform Code of Military Justice. It was asserted in his behalf, however, that "grave doubt" on that point existed. The Court of Military Appeals seems not to have had any doubt. It stated:

"The evidence shows unmistakably that the accused was a member of the United States Army in 1950. There was no evidence that he was ever discharged. Mere expiration of the regular period of enlistment does not alter a serviceman's status as a person subject to the Uniform Code. Article 2(1), 50 U.S.C.A. § 552, Uniform Code of Military Justice, United States v. Johnson, 6 U.S.C.M.A. 320, 20 C.M.R. 361. Consequently, the accused was and still is subject to the Uniform Code." "As a person subject to the Code, he is not within the class of civilians who might have a possible objection to trial by military tribunals for a violation of Article 104. See Ex parte Quirin, supra, [317 U.S. 1, 63 S.Ct. 1, 2, 87 L.Ed. 3]. As a person subject to the Code, unquestionably he can be constitutionally tried by a court-martial for a violation of its provisions. United States v. Marker, 1 U.S.C.M.A. 393, 3 C.M.R. 127."

Subsequently, the Supreme Court entered its decision in United States ex rel. Toth v. Quarles, supra. Thereafter petitioner filed a motion for reconsideration in the Court of Military Appeals in which he undertook "to substantiate the doubt of which the court has previously been warned," raising the precise question now urged: that he was not subject to trial by court-martial on the date he was arraigned. It was urged that, while "Article 2(1) of the Code provides that persons awaiting discharge after expiration of their term of enlistment are subject to the Code," still there must be read into that section a requirement that, before expiration of the term of enlistment, proceedings with a view to trial must have been duly commenced against such person by arrest or service of formal charges. Reconsideration was granted by the Court of Military Appeals; but it did not recede from the position which it had taken in its opinion. It declined to release petitioner, notwithstanding his contention that "he was entitled, in the absence of charges served upon him beforehand, to his discharge upon the expiration of his term of enlistment, as extended by law, more than 60 days before charges were preferred * * * [and] was, in effect, a civilian on the day he was brought to trial."

■■ Assuming, without deciding, that this court could substitute its judgment for that of the Court of Military Appeals, still it cannot be found, on the present record, that petitioner was a civilian on the date charges were filed against him or that he is entitled to be released from custody under the *rationale* of the Toth case. While termination of service entitles one in the armed services to be released, the formalities of a discharge may not be dispensed with. "He cannot of his own volition throw off the garments he once put on * *." In re Grimley, 137 U.S. 147, 152, 11 S. Ct. 54, 55, 34 L.Ed. 636. Cf. United States ex rel. Parsley v. Moses, D.C., 138 F.Supp. 799 and cases cited. Unreasonable delay in granting a discharge could, in all probability, be made the basis for an appropriate court action; but petitioner did not institute such action, nor did he take any other steps to bring about his discharge. It is stated in his behalf that he requested a prompt discharge at the time he first entered the hospital; but the conclusion is inescapable that he readily accepted the leaves of absence, with full pay and allowances, until the charges upon which he was tried were instituted. In the studied judgment of this court, petitioner was not a civilian but was a member of the armed forces awaiting discharge after expiration of his term of enlistment at the time the prosecution was instituted.

This court has not ignored, although it has not discussed, the legislative history of Article 2(1) set out in the well-prepared briefs. The statute in plain, unambiguous and unequivocal language makes subject to court-martial all persons belonging to a regular component of the armed forces, "including those awaiting discharge after expiration of their terms of enlistment." It is conceded upon brief that petitioner "was not formally discharged from the military service prior to his arraignment and trial." That he was, therefore, "awaiting discharge after expiration of * * * [his term]" seems to be clear. He had not, as had the petitioner in the Toth case, "severed all relationship with the military and its institutions."

■■ It is next urged on behalf of petitioner that Articles 104 and 105, Title 50 U.S.C.A. §§ 698 and 699, under each of which he was convicted, are unconstitutional. This issue was raised before his arraignment by a plea in bar and its denial was assigned as error to the Board of Review and the Court of Military Appeals but rejected by each. Whether, in this posture, it should be re-examined by this court is doubtful; but a brief resume of the discussion of the question in the briefs may not be amiss.

Pointing out that Articles 104 and 105, alone among the punitive articles, are directed against "any person who" commits the act proscribed thereby, it is argued that the articles "render any person, military or civilian, citizen or alien, at home or abroad, amenable to trial and punishment." This, it is said, makes Article 104, if applied to any class of citizens not described in Article 2 of the Uniform Code of Military Justice unconstitutional; and, "since it is inseverable, if it is invalid as to one, it is invalid as to all."

Ex parte Milligan, 4 Wall. 2, 18 L.Ed. 281, is relied upon as establishing the rule—in the language of petitioner's brief—that "a citizen of the United States not subject to military law is not amenable to trial by a military tribunal when the civil courts are open." That case, however, is to be read in the light of Ex parte Quirin, 317 U.S. 1, 63 S.Ct. 1, 87 L.Ed. 3; In re Yamashita, 327 U.S. 1, 66 S.Ct. 340, 90 L.Ed. 499, and others, including United States ex rel. Toth v. Quarles, supra. Recently the Court of Appeals for this (the Tenth) Circuit, in Colepaugh v. Looney, 235 F.2d 431, 432, referred to the traditional recognition of "a body of international common law known as the law of war" under which unlawful combatants " 'are subject to trial and punishment by military tribunals for acts which render their belligerency unlawful.' " (The

subquotation is from Ex parte Quirin, supra, 317 U.S. at page 31, 63 S.Ct. at page 12). This petitioner seems clearly to have been proceeded against as an unlawful combatant.

The Toth case held invalid only Article 3(a) of the Uniform Code of Military Justice. That holding, it is believed, does not justify or compel a similar holding as to Articles 104 and 105. The United States Court of Military Appeals held that Article 104 is constitutional. It declined to permit the petitioner to seek "vindication of the constitutional rights of some third party" even though it expressed a willingness to assume "that civilians not otherwise validly subject to the Uniform Code cannot be tried by a military tribunal if the offense charged is not a violation of the laws of war, or if martial law has not been constitutionally established." Whether such assumption tends to make more tenable petitioner's present contention need not be decided nor is it suggested. This court finds itself in agreement with the Court of Military Appeals that Article 104 is not unconstitutional. Petitioner was within the class named in Charge I, i. e., a *person who*, without proper authority, knowingly communicated, corresponded and held intercourse directly and indirectly with the enemy. In other words, acted as an unlawful combatant. Whether, in fact, he was guilty has been determined by the court-martial and reviewed as contemplated by the Uniform Code of Military Justice. That holding cannot be overturned by this court.

The other questions discussed upon brief, it is believed, are in the category referred to in Hiatt v. Brown, supra, in which the rule enunciated in In re Grimley, supra, 137 U.S. at page 150, 11 S.Ct. 54, was reiterated—"by *habeas corpus* the civil courts exercise no supervisory or correcting power over the proceedings of a court-martial * * *. The single inquiry, the test, is jurisdiction." No. III concerns denial by counsel for the prosecution of a request on behalf of petitioner for the production of some 500 statements of military personnel who, in the language of the brief, "could reasonably be presumed to have had knowledge, at the very least, of the *res gestæ* of the offense charged against the accused." This, it is asserted, deprived him of a full and fair hearing of his case amounting to a denial of due process of law. In No. IV it is asserted that the unequal enforcement of the Code—i. e., only against Army personnel and not against members of the Air Force, the Navy or the Marines as to which the court is asked to take judicial notice—constitutes a violation by the Executive of petitioner's constitutional rights. In No. V it is contended that "if the matters he was charged with * * * constituted offenses of any kind they constituted the offense of treason * * * and must be tried to a jury after indictment."

All of the questions referred to in the preceding paragraph were passed upon by the Court of Military Appeals. Answering a contention similar to No. V above, the Court of Appeals recently said in the Colepaugh case, supra, 235 F.2d 432:

"The petitioner also argues that the charges against him, at most, made out the constitutional offense of treason, triable in civil courts in accordance with the established procedure, including the right to a public trial by jury, with the effective assistance of counsel of his own choosing. The short answer is, as pointed out in Ex parte Quirin, supra, 317 U.S. at page 38, 63 S.Ct. at page 15, that the essential elements of the two offenses are not the same. The other answer is that if the acts specified in the charge be treasonable and triable as such in the civil courts, he was not so charged. The jurisdiction of the civil courts was never invoked for treasonable offenses, and an accused has no constitutional right to choose the offense or the tribunal in which he will be tried. Cf. Stamphill v. United States, 10 Cir., 135 F.2d 177; Nolan v. United States, 8 Cir., 163 F.2d 768. It

does not derogate from the supremacy of the civil law or the civil courts to accord to the military tribunal the full sweep of the jurisdiction vested in it under the Constitution and the laws thereunder."

The remaining contentions are: (VI) that "inducements" made to prisoners of war in Korea amounted to an agreement not to prosecute petitioner; and (VII) that petitioner, by reason of his treatment as a prisoner of war "was not mentally capable of knowing right from wrong, or, if knowing the difference of right from wrong, was not mentally capable of adhering to the right." Those questions were also passed upon by the court-martial and the reviewing authorities. This court cannot find, on the present record, that the adverse rulings on either of them denied petitioner any basic right guaranteed by the Constitution.

The court is of the opinion and now holds that the petitioner is legally in the custody of the respondent. It follows that the writ of habeas corpus should be quashed. Order so providing is this date being entered.